**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Edward BALKEY, Defendant–Appellant.**

**No. 01CA0018.**

Colorado Court of Appeals,
Div. V.

May 23, 2002.

Certiorari Denied Sept. 16, 2002.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Edward Balkey, appeals the judgment of conviction entered upon a jury verdict finding him guilty of reckless vehicular homicide. We affirm.

While driving alone in his van, defendant crossed the centerline of a highway and a hit an oncoming car head-on, killing its driver. Defendant had no drugs or alcohol in his system, his van was mechanically sound, and the highway was clear and dry when the collision occurred.

A motorist who was following defendant testified for the prosecution at trial that, while defendant's speed was not excessive, he had attempted repeatedly to pass cars in no-passing zones and had nearly caused an accident shortly before the collision occurred.

Defendant testified that he was tired on the day of the accident. He could not recall the collision, but concluded that he must have been asleep when it occurred.

The trial court instructed the jury on careless driving resulting in death under § 42–4–1401(2), C.R.S.2001, as a lesser included offense of reckless vehicular homicide. Defense counsel asserted in closing argument that defendant could not be guilty of vehicular homicide because he was asleep when the collision occurred and thus did not act with conscious disregard of a substantial and unjustifiable risk within the meaning of § 18–1–501(8), C.R.S.2001.

During its deliberations, the jury sent a note indicating that it would like to see the testimony of the motorist who had observed defendant's driving and the accident. Over defendant's objection that providing the transcript would unduly emphasize that testimony, the trial court provided the jury with the twelve-page transcript of the witness's direct and cross-examination.

I.

Defendant contends that the trial court erred in dealing with the jury's request to see the testimony of the prosecution witness. We disagree.

■ The reading of all or part of the testimony of one or more of the witnesses at trial at the specific request of the jury during its deliberations is discretionary with the trial court. *Settle v. People*, 180 Colo. 262, 504 P.2d 680 (1972). In exercising its discretion, the court should consider whether reading back certain testimony would give it undue weight or emphasis, the difficulty involved in reading back the testimony, whether the jury's request is reasonably well-focused, and the amount of time the procedure would consume. *See People v. Coit*, 961 P.2d 524 (Colo.App.1997). We review the trial court's response to the jury's request under an abuse of discretion standard. *See Franklin v. People*, 734 P.2d 133 (Colo.App.1986).

A.

■ Defendant first asserts that the trial court abused its discretion because the review improperly bolstered the testimony and it was cumulative and unduly prejudicial and therefore inadmissible under CRE 403. In addition, he contends the jury's request was not reasonably specific. We disagree.

First, the "evidence" to which defendant objects consisted of previous testimony that had already been admitted at trial. The witness had observed defendant's driving for some distance and saw the accident happen. No one else had the information that he possessed, except defendant. Hence, the evidence itself was not cumulative. Moreover, while the testimony had already been once received, its repetition to the jury during its deliberations was not "needless" within the meaning of CRE 403.

■ Furthermore, when presented with appropriate safeguards, such repeated testimony is not cumulative or unduly prejudicial, nor does it improperly bolster the witness's testimony. *See Settle v. People, supra.*

In addition, the jury's request was quite specific and well focused. It did not seek, for example, to review all the testimony concerning the accident regardless of the witness giving it. Such a request could indeed have required piecemeal review and possibly could have overlooked some record evidence. Instead, the jury wanted to review only the motorist's testimony. And, the fact that the entire transcript consisted of only twelve

pages defeats any contention that the request was too broad or that complying with it would be too time consuming.

## B.

■ Relying in part upon *People v. Montoya*, 773 P.2d 623 (Colo.App.1989); *People v. Talley*, 824 P.2d 65 (Colo.App.1991); and 3 ABA Standards for Criminal Justice Standard 15–5.2 (3d ed.1996), defendant asserts that the trial court abused its discretion when it provided the jury with a transcript of the testimony instead of reading it back in open court. We disagree.

### 1.

We do not find *Montoya, Talley*, and the ABA Standard persuasive in this case.

Standard 15–5.2 provides, in pertinent part, that if the jury requests a review of certain testimony, the court should have the requested parts of the testimony submitted to the jury in the courtroom. It further provides that the court need not submit testimony beyond that specifically requested by the jury, but that the court may also have the jury review other testimony relating to the same factual issue so as not to give undue prominence to the testimony requested.

In *Montoya*, the defendant asserted that the trial court had erred in allowing the jurors during their deliberations to have unrestricted, unsupervised access to a videotape admitted into evidence. On the tape, an eyewitness made statements concerning the perpetrator's identity that were inconsistent with his trial testimony. A division of this court reasoned that the videotape, offered for proof of the statements made by the witness, was virtually indistinguishable from a deposition because it was testimonial evidence. Noting that depositions should not be reviewed by a jury on an unsupervised basis, the division held that the trial court had erred in allowing unrestricted and unsupervised access to the videotaped statement during the jury's deliberations without adopting a controlled procedure to prevent undue weight being accorded to it.

In *Talley*, which relied upon *Montoya*, another division of this court held that it was reversible error to allow the jury to have unrestricted access, without providing adequate safeguards, to an audiotape of a pretrial interview with the child victim, which was inconsistent with the child's trial testimony and other pretrial statements.

*Montoya* and *Talley* were driven, in part, by the existence of inconsistent witness statements and the concern that the jury might exclusively believe the version represented by the videotape or audiotape and ignore other contradictory statements made by that particular witness. Here, in contrast, the motorist made no inconsistent statements. Instead, the motorist's trial testimony was the only statement of his that was introduced, and he was not impeached. Hence, there was no danger that the jury might place greater emphasis upon or believe only one version of the motorist's statement and discard his other statements.

The divisions in *Montoya* and *Talley* were likewise concerned that the jury might give undue emphasis to one item and ignore the balance of the evidence. Here, in contrast, the jury specifically requested the testimony of the involved witness. Thus, the jurors had already focused upon that particular evidence. *See State v. Jenkins*, 845 S.W.2d 787, 792 (Tenn.Crim.App.1992)(the court does not emphasize the evidence by permitting the jury to rehear what they wish to hear in carrying out their task of determining the facts in a case; if any emphasis is placed on the evidence, it is placed there by the jury, not the court).

Furthermore, the trial court here gave a supplemental instruction to the jury just before furnishing the transcript, stating that the jury should "consider all the evidence that is before [it] and the instructions of the court." The elemental instructions previously given echoed the admonition that the jury should consider all the evidence, and another instructed the jury to assess witness credibility in reaching its verdict.

In addition, while not specifically expressed in the opinions, it appears that the *Montoya* and *Talley* divisions were concerned that out-of-court statements such as depositions, as opposed to live testimony pre-

sented in the courtroom, could be accorded special weight and given undue emphasis. Such a concern is not present here.

### 2.

While one Colorado case holds that it is not an abuse of discretion to refuse a jury's request for a transcript, *see Franklin v. People, supra,* no case holds that transcripts may never be provided. We fail to discern any meaningful distinction between reading back testimony in open court and providing the jury with a written transcript of that testimony.

The federal circuits have allowed trial courts to give transcripts to the jury. In *United States v. Bertoli,* 40 F.3d 1384 (3d Cir.1994), the court found no material difference between sending the jury written transcripts of trial testimony and reading the testimony back in court. On the one hand, the court recognized that when testimony is read back to the jury, the court can ensure that all the jurors are present when the testimony is read, which could not be done in the privacy of the jury room. On the other hand, the court also noted that when testimony is read back, an inattentive juror might be persuaded unduly by an attentive juror's version of the read-back testimony. Moreover, a juror's mishearing of read-back testimony cannot be corrected by a second look. *See also United States v. Lujan,* 936 F.2d 406 (9th Cir.1991)(trial court's decision to provide trial transcript to jury reviewed for abuse of discretion; trial court could properly allow transcript of witness's testimony to be given to jury during deliberations if it provided counsel an opportunity to note inaccuracies in the transcript, cautioned jury that the transcript was not to serve as a substitute for juror memory or for assessment of credibility, admonished the jury to weigh all the evidence and not focus unduly on any portion of the trial, and instructed that the transcript was not authoritative and should not prevail over the jurors' memories); *United States v. Betancourt,* 838 F.2d 168 (6th Cir.1988)(furnishing of transcripts to jury well within trial court's discretion); *cf. United States v. Hernandez,* 27 F.3d 1403 (9th Cir.1994)(unlike in *Lujan,* trial court permitted undue emphasis when it failed to admonish the jury to weigh all the evidence and to instruct that the transcript was not authoritative, and the court also abused its discretion by refusing defense counsel's request to review the transcript for accuracy).

In *United States v. Escotto,* 121 F.3d 81 (2d Cir.1997), the court surveyed the decisions of various courts addressing this issue. It concluded that providing written transcripts to the jury is a more efficient method than reading back lengthy portions of testimony. The court also noted that the jurors' opportunity to turn the pages of transcripts, some rapidly and some leisurely, will often be preferable to a verbatim and usually unanimated rereading of testimony. Accordingly, the court concluded that the trial court had not erred in providing transcripts of witness testimony instead of having the requested testimony read back to the jury.

### 3.

We are persuaded by the rationale of the federal cases allowing transcripts to be given to the jury when a review of trial testimony is requested, and we adopt it here. We also conclude that the trial court should exercise its discretion to employ adequate safeguards against the jury giving undue weight to the requested testimony. *See Settle v. People, supra; People v. Montoya, supra.* The safeguards may include, but are not limited to, providing counsel an opportunity to note inaccuracies in the transcript, cautioning the jury that the transcript is not to serve as a substitute for juror memory or for assessment of credibility, admonishing the jury to weigh all the evidence and not to focus unduly on any portion of the trial, and instructing the jury that the transcript is not completely authoritative and should not prevail over the jurors' memories. The court may also give the jury a transcript of opposing or contrary testimony. *See 3 ABA Standards for Criminal Justice Standard 15-2.* We decline, however, to create a rigid test that mandates or formulates a specific rule.

### 4.

Applying those principles here, we first note that defendant did not ask for an oppor-

tunity to note inaccuracies in the transcript, nor did he ask that the jury be cautioned that the transcript was not to serve as a substitute for memory or for assessment of credibility. He did not request an admonition that the jury should weigh all the evidence and not focus unduly on any portion of the trial, or an instruction advising that the transcript was not authoritative and should not prevail over the jurors' memories. Defendant also did not ask to submit any possibly controverting testimony, such as his own. *See United States v. Escotto, supra* (better practice to lessen the risk of undue emphasis is to give a precautionary instruction, such as reminding the jury to consider all the evidence without unduly emphasizing any portion of it; however, even though trial court had not given such an instruction, to the extent defendant was arguing that was error, argument was rejected because it was not raised in trial court).

As previously noted, however, here the court sua sponte informed jurors just before it delivered the transcript that they should consider all the evidence together with the instructions the court had given, one of which instructed that the jury should consider all the facts and circumstances that affected the credibility of each witness. These instructions, which we presume the jury followed absent any contrary indication, reduced the danger that the jurors would place undue emphasis on the transcript. *See People v. Cardenas,* 25 P.3d 1258 (Colo.App.2000).

Moreover, the record reflects that the court asked the court reporter how long it would take to prepare both an uncorrected and a corrected transcript of the testimony. By all indications, the reporter furnished a corrected copy for the jury's use. And, there is no indication in the record that the trial court did not review the transcript before providing copies to the jury.

To the extent that the record is silent as to whether counsel reviewed the transcript for accuracy, even if we accept defendant's contention that the lack of such an opportunity is error, we cannot presume that any error occurred here. *See People v. Bishop,* 7 P.3d 184 (Colo.App.1999).

What is more, in a discussion with counsel before responding to the jury's request, the trial court specifically noted that it would consider the concerns about overemphasis, the time required to furnish the testimony, and the jury's desire to have it. It noted that the requested testimony was brief, that the case had lasted only two days, that the testimony contained information that was helpful to both sides, and that a corrected transcript would be available within fifteen minutes. It also noted the trend in this state toward liberalizing juror participation in trials and providing the jury with information it requests. *See* Supreme Court Committee on Effective and Efficient Use of Juries, *With Respect to the Jury* (Feb.1997)(advocating juror notetaking, use of trial notebooks, and permitting jurors to submit written questions to witnesses); *see also* Crim. P. 16(f); C.R.C.P. 47(m), (t); CJI–Civ. 4th 1:7, 1:7(A) (1998)(allowing same).

Indeed, in this case jurors were given individual trial notebooks and were allowed to take notes throughout the trial. Hence, even had the court simply read back the testimony, the jurors could have taken notes about it. Furnishing the transcript minimized the possibility that the jurors might rely upon incomplete or incorrect notes or recollections of the testimony.

Nor does the fact that the motorist's testimony was the primary inculpatory evidence against defendant require a different result. *See State v. Jenkins, supra* (if witness's testimony was the "linchpin" of the state's case as defendant asserted, it was understandable that the jury might focus on that testimony and desire to remove any existing doubt as to that testimony; given the jury's request, the trial court did not place undue emphasis on the testimony by allowing the jury to hear it again).

Under these circumstances, we conclude that the trial court did not abuse its discretion.

II.

■ Defendant asserts that the felony offense of reckless vehicular homicide under § 18–3–106, C.R.S.2001, is unconstitutional

because it proscribes the same conduct as the misdemeanor offense of careless driving resulting in death. However, because defendant did not raise this issue in the trial court, we will not consider it here. *See People v. Allen,* 43 P.3d 689 (Colo.App. 2001)(refusing to consider the same argument made for the first time on appeal with respect to the attempted reckless manslaughter and reckless endangerment statutes); *People v. Boyd,* 30 P.3d 819 (Colo.App.2001)(declining to consider equal protection claim raised for the first time on appeal).

The judgment is affirmed.

Judge DAVIDSON and Judge NIETO concur.