The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Stanton HOSKAY, Defendant–Appellant.

No. 02CA0394.

Colorado Court of Appeals,
Div. II.

Oct. 9, 2003.

Certiorari Denied April 12, 2004.

Ken Salazar, Attorney General, Anthony J. Navarro, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Keyonyu X O'Connell, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Stanton Hoskay, appeals the judgment of conviction entered upon jury verdicts finding him guilty of sexual assault of a physically helpless victim and public indecency. We affirm.

A counselor at a detoxification facility testified that he admitted defendant to the facility and directed him to the men's dormitory. Later that evening, the counselor conducted a bed check and looked into the dormitory room through a window in the hall. The counselor saw defendant, whose pants were pulled down, on top of a man (the victim) who appeared to be asleep. Although the counselor could not see defendant's genitals, it appeared to him that defendant was having anal intercourse with the victim. When the counselor entered the room, defendant was startled. However, the victim remained motionless.

The counselor escorted defendant to the main office and soon returned to the dormitory room. The counselor then woke the victim and asked him whether he knew what had just occurred. The victim said that he did not.

The victim testified that he was dreaming about analingus being performed on him when he awoke to the sound of the counselor yelling at a man to get back in his own bed. The victim fell back to sleep until the counselor woke him a second time and told him what had happened. The victim testified that he experienced soreness in his anus for a couple of days after the incident.

## I.

■ Defendant argues that the trial court abused its discretion by denying his challenge for cause to one of the prospective jurors. We are not persuaded.

A prospective juror should be disqualified for cause if he or she is biased and cannot render a fair and impartial verdict according to the laws and evidence presented at trial. Section 16–10–103(1)(j), C.R.S.2002. Under § 16–10–103(1)(j), the trial court must sustain a challenge for cause to a prospective juror if the juror has a state of mind "evinc-ing enmity or bias toward the defendant or the state"; however, no juror

shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

■ A trial court's ruling denying a challenge for cause may only be reversed on appeal if the trial court abused its discretion. *People v. Vecchiarelli–McLaughlin,* 984 P.2d 72, 75–76 (Colo.1999).

Here, the challenged prospective juror initially stated that she had a religious objection to homosexuality and admitted that if she were in defendant's position, she would be concerned about having a person such as herself on the jury. The prospective juror also stated that she hoped she would not be selected because of the nature of the case. The prospective juror conceded that she did not know how her feelings about homosexuality would affect her judgment.

However, the prospective juror also stated that she thought she could judge the case based on the evidence and afford defendant the presumption of innocence irrespective of his sexual orientation. In addition, the prospective juror told the court that she would "hear the evidence and decide whether or not he had committed an illegal act rather than judge him upon his ... tendencies." The prospective juror made clear that she would "judge solely upon the evidence that's presented whether he committed the act or whether he has not committed the act" and "would never send someone [to prison] for something [she] did not feel ... they committed just based upon some feelings that [she had] about certain subjects."

Based on this record, we cannot say that the trial court abused its discretion by relying on the prospective juror's assurances that she could be impartial and render a fair verdict. Accordingly, we conclude the trial court acted within its discretion in denying defendant's challenge for cause.

## II.

■ Defendant also argues that the trial court abused its discretion by allowing the counselor to testify that the sexual encounter appeared to be nonconsensual. We disagree.

CRE 701 provides, in relevant part, as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness [and] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue....

■ A lay witness may state an opinion about another person's motivation or intent if the witness had sufficient opportunity to observe the person and to draw a rational conclusion about the person's state of mind. Summary characterizations and impressions as to what transpired can be of significant assistance to a fact finder. *People v. Jones,* 907 P.2d 667, 669 (Colo.App.1995).

■ A reviewing court must not disturb a trial court's admission of evidence pursuant to CRE 701 absent an abuse of discretion. *Robinson v. People,* 927 P.2d 381, 384 (Colo. 1996).

Here, the trial court found that the counselor's opinion concerning whether the sexual encounter was consensual was controlled by CRE 701 and that his testimony was based on his own observations. Accordingly, the court overruled defendant's objection and permitted the counselor to testify to his opinion of the victim's unconscious state and what appeared to him to be a sexual assault.

We conclude the record supports the trial court's findings. *See People v. Jones, supra* (witness's opinion testimony as to whether robbery was occurring should have been admitted). Accordingly, we perceive no abuse of discretion in the court's ruling.

To the extent defendant is also asserting that the counselor's testimony was improper because it included an opinion as to an ultimate issue, we reject this claim. *See* CRE 704 ("[t]estimony in the form of an opinion or inference otherwise admissible is not objec-

tionable because it embraces an ultimate issue to be decided by the trier of fact"); *People v. Brewer,* 720 P.2d 583, 587–88 (Colo. App.1985).

## III.

■ Nor do we agree with defendant's contention that the trial court erred by refusing to instruct the jury that in order to commit the offense of public indecency, a person must know that he is in a public place.

As relevant here, the offense of public indecency is defined as follows:

> Any person who performs any of the following in a public place or where the conduct may reasonably be expected to be viewed by members of the public commits public indecency:
>
> (a) An act of sexual intercourse; or
>
> (b) An act of deviate sexual intercourse; or
>
> . . .
>
> (d) A lewd fondling or caress of the body of another person.

Section 18–7–301(1), C.R.S.2002.

" 'Public place' means a place to which the public or a substantial number of the public has access, and includes but is not limited to highways, transportation facilities, schools, places of amusement, parks, playgrounds, and the common areas of public and private buildings and facilities." Section 18–1–901(3)(n), C.R.S.2002.

Defendant tendered an instruction that tracked the language of § 18–7–301(1), but also stated that he could not be found guilty unless the jury determined that he knew he was in a public place or a place where his conduct may reasonably have been expected to be viewed by members of the public. The trial court refused the instruction, instead submitting instructions limited to the language of § 18–7–301(1) and § 18–1–901(3)(n). In addition, the court instructed the jury that the offense of public indecency is a strict liability crime.

■ In interpreting a statute, we must give effect to the intent of the General As-

sembly, which is vested with the power to define criminal conduct and to establish the legal components of criminal liability. Generally, to subject a person to criminal liability, there must be concurrence of the actus reus, an unlawful act, and the mens rea, a culpable mental state. *Gorman v. People*, 19 P.3d 662, 665 (Colo.2000).

■ Legislative silence on the element of intent in a criminal statute is not to be construed as an indication that no culpable mental state is required. A requisite mental state may be inferred from the statute. *Gorman v. People, supra*, 19 P.3d at 665.

> Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such a culpable mental state.

Section 18–1–503(2), C.R.S.2002.

However, not all offenses have a culpable mental state:

> The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If that conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of "strict liability."

Section 18–1–502, C.R.S.2002.

Examples of strict liability offenses are speeding and driving under the influence, *People v. Ellison*, 14 P.3d 1034 (Colo.2000), and vehicular homicide or assault while intoxicated. *People v. Garner*, 781 P.2d 87 (Colo. 1989); *People v. Lucero*, 985 P.2d 87 (Colo. App.1999).

Here, the plain language of the public indecency statute reflects the General Assembly's intent to make the offense a strict liability crime without a culpable mental state. The General Assembly employed an objective standard and made the statute applicable to the performance of sexual acts "in a public place or where the conduct may *reasonably* be expected to be viewed by members of the public." Section 18–7–301(1) (emphasis added). This objective standard depends not on what a particular defendant actually knew, but on what a reasonable person in the defendant's position should have known. Therefore, superimposing a requirement that an offender must know that he or she is in a "public place" within the meaning of § 18–1–901(3)(n) would frustrate the clear intent of the General Assembly.

Accordingly, because the trial court's instructions accurately stated the law, we find no error in the court's rejection of defendant's tendered instruction.

### IV.

■ We also are not persuaded by defendant's contention that the trial court erred by failing to instruct the jurors that they should not be influenced by gender bias or prejudice.

Section 18–3–408, C.R.S.2002, specifies that the "jury shall be instructed not to allow gender bias or any kind of prejudice based upon gender to influence the decision of the jury."

■ Where, as here, the trial court neglects to submit such an instruction and the defendant does not tender such an instruction or object to its omission, the plain error standard of review applies. *People v. Johnson*, 870 P.2d 571, 572 (Colo.App.1993).

■ The standard for plain error is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Johnson, supra*.

Here, defendant contends that he was prejudiced by the absence of a gender bias instruction because this case involved a homosexual act and his theory of defense was consent. We do not find this argument persuasive because it erroneously equates gender bias with bias against homosexuals, and the record provides no reason to believe the jury would have confused these two concepts. Moreover, defendant's concern was adequately addressed by the trial court's in-

struction that the jury not allow prejudice to influence its decision.

Accordingly, we conclude the omission of a gender bias instruction did not rise to the level of plain error. *See People v. Johnson, supra* (holding that the absence of a gender bias instruction did not constitute plain error based, in part, on the fact that the jury had been instructed not to allow prejudice to influence its decision).

Further, even if we were persuaded by defendant's claim that the absence of a gender bias instruction should be measured by a constitutional standard, we would nevertheless conclude that this omission was not a structural error and does not require reversal because it was harmless beyond a reasonable doubt. *See Griego v. People,* 19 P.3d 1 (Colo.2001); *People v. Johnson,* 74 P.3d 349 (Colo.App.2002); *People v. Johnson, supra,* 870 P.2d at 572.

### V.

■ We also reject defendant's contention that the evidence was insufficient to support the jury's verdict finding him guilty of sexual assault of a physically helpless victim. Specifically, defendant asserts the evidence did not establish that the victim suffered sexual penetration or that he was physically helpless.

"Any actor who knowingly inflicts . . . sexual penetration on a victim commits sexual assault if . . . [t]he victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented." Section 18–3–402(1)(h), C.R.S.2002 (formerly § 18–3–402(1)(e)). " 'Physically helpless' means unconscious, asleep, or otherwise unable to indicate willingness to act." Section 18–3–401(3), C.R.S.2002. And, as relevant here, " 'Sexual penetration' means . . . anal intercourse. Emission need not be proved as an element of any sexual penetration. Any penetration, however slight, is sufficient to complete the crime." Section 18–3–401(6), C.R.S.2002.

■ When assessing the sufficiency of the evidence in support of a finding of guilt, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as substantial and sufficient to support a finding of the accused's guilt beyond a reasonable doubt. We must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988).

Viewing the trial evidence according to the foregoing standards, we conclude the victim's testimony describing the soreness in his anus, the counselor's testimony that both defendant and victim were naked from the waist down, and defendant's statement that "it was consensual" were sufficient circumstantial evidence to prove that penetration occurred.

We further conclude that the testimony of the victim and the counselor was sufficient to prove beyond a reasonable doubt that the victim was asleep, and therefore physically helpless, during the assault.

### VI.

■ Finally, defendant argues that the evidence was insufficient to support the jury's verdict finding him guilty of public indecency because the area where the offense occurred was neither a "public place" nor a "place where the conduct may reasonably have been expected to be viewed by members of the public." We disagree.

The evidence established that the dormitory room of the detoxification facility was open to any man admitted to the facility, as well as to the staff. This evidence was sufficient to support the jury's finding that the room was a common area of a private facility and also a place where sexual conduct may reasonably have been expected to be viewed by members of the public. *See State v. Black,* 260 Ark. 864, 545 S.W.2d 617 (1977)("drunk tank" of city jail, wherein jailer observed defendant allegedly engaging in oral sex with another prisoner, was a "public place" within the meaning of the public sexual indecency statute).

The judgment is affirmed.

Judge ROTHENBERG and Judge GRAHAM concur.