The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Roy Allen TALLWHITEMAN,
Jr., Defendant–Appellant.

No. 03CA0211.

Colorado Court of Appeals,
Div. I.

March 10, 2005.

As Modified on Denial of Rehearing
May 12, 2005.

Certiorari Denied Dec. 19, 2005.

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

LOEB, J.

Defendant, Roy Allen Tallwhiteman, Jr., appeals the judgment of conviction entered upon a jury verdict finding him guilty of two counts first degree assault, attempted reckless manslaughter, felony menacing, and reckless endangerment. He also appeals the sentence. We vacate defendant's convictions of first degree assault-extreme indifference and reckless endangerment, but otherwise affirm.

Defendant, who was intoxicated, walked down a street in Durango displaying a large knife with a serrated edge and brass knuckle handle. Two men on the street described defendant as making a hissing sound as he walked between them.

Defendant continued walking and encountered the victim, who testified that defendant aggressively stared at him and muttered as he walked past. The victim twice felt compelled to turn around and put his hands up in a boxing stance. The second time the victim turned around, defendant and the victim fought. Defendant stabbed the victim in the right side of his forehead.

Defendant was charged with attempted first degree murder, first degree assault with intent to cause serious bodily injury with a deadly weapon, first degree assault-extreme indifference, menacing with a deadly weapon, and crime of violence.

The jury returned guilty verdicts on first degree assault with intent to cause serious bodily injury with a deadly weapon, first degree assault-extreme indifference, menacing with a deadly weapon, attempted reckless manslaughter as a lesser included offense of attempted first degree murder, and reckless endangerment, as a lesser offense.

The trial court imposed concurrent sentences of twenty-eight years on each of the two assault charges, three years on the attempted reckless manslaughter charge, two years on the menacing charge, six months on the reckless endangerment charge, and one year for violation of bond conditions. This appeal followed.

I. Jury Request

■ Defendant first contends that the trial court erred when it refused the jury's request that the court re-read to them the parties' stipulation of certain facts. We are not persuaded.

■ The reading of all or part of a witness's testimony at the specific request of the jury during deliberations is left to the trial court's discretion, and we review the court's decision under the abuse of discretion standard. *Settle v. People*, 180 Colo. 262, 264, 504 P.2d 680, 680 (1972); *People v. Jenkins*, 83 P.3d 1122, 1128 (Colo.App.2003); *People v. Balkey*, 53 P.3d 788, 790 (Colo.App. 2002). The court should consider whether reading back certain testimony would give it undue weight or emphasis; the difficulty involved in reading back the testimony; whether the jury's request is reasonably well focused; and the amount of time the procedure would consume. *People v. Balkey, supra.*

At trial, the parties entered into the following written stipulation:

The parties have agreed as to the existence of certain facts. On March 26, 2002, Dr. McManus, an emergency room doctor at Mercy Medical Center, requested a blood draw of Mr. Tallwhiteman for medical purposes. The blood was drawn at 11:45 p.m. The laboratory at Mercy Medical Center tested Mr. Tallwhiteman's blood

alcohol level by conducting a test of Mr. Tallwhiteman's blood serum. The result of the test was .279. You may regard those facts as proven.

The trial court read the stipulation into the record after a police officer testified about blood alcohol content (BAC) of persons who are pulled over for driving under the influence. Later testimony by a forensic chemist and toxicologist indicated that the serum test referred to in the stipulation translated into a BAC of between .23 and .25.

Jury instruction 13 stated: "The parties have agreed as to the existence of certain facts. You may regard those facts as proven." During deliberations, the jury asked in regard to instruction 13, "Judge, what are these facts?" Defendant requested the stipulation be re-read and likened it to admitted documentary evidence, such as a tape recording, which, under C.R.C.P. 47(m), may be taken into the jury room. The prosecution objected because the stipulation referred only to the blood serum level, not the BAC, and thus could be misleading to the jury and place undue emphasis on defendant's blood serum level.

The trial court ruled that the stipulation was more like testimony in a transcript than a tape recording. Earlier, when the jurors requested that the court re-read the transcript of three witnesses, the parties agreed that the jurors must rely on their collective memory regarding testimony and that those transcripts would not be re-read to the jury. The court applied the same rationale to the jurors' request regarding the stipulation. Thus, the court replied to the jury, "[Instruction 13] refers to the stipulation of the parties read to you during the trial. As to the facts contained in that stipulation, you must rely on your collective memory."

Here, the prosecution pointed out to the court the potential confusion and undue weight that might be given to the blood serum level if the stipulation were re-read to the jury without testimony about defendant's legal BAC number. *See Settle v. People, supra* (it is an abuse of discretion for the trial court to fail to consider whether the requested testimony might be given undue weight or emphasis by the jury). Moreover, the parties had agreed in another instance that jurors would be instructed to rely on their collective memory regarding trial testimony.

Accordingly, we conclude the trial court did not abuse its discretion when it refused the jury's request to re-read the parties' stipulation.

## II. Police Officers' Lay Opinion Testimony

■ Defendant contends that the trial court plainly erred by permitting police officers, who had not been offered or accepted as experts, to testify that it is not uncommon for guilty criminal suspects and defendants (1) to deny committing the offenses, (2) to falsely accuse the police of brutality, and (3) to falsely claim that they do not understand their *Miranda* rights. Specifically, defendant contends the officers' testimony was improperly admitted as lay opinion testimony under CRE 701. We disagree.

During redirect examination of one of the arresting police officers, the prosecution elicited the following testimony:

Q: When you initially informed the defendant of what he had done or what you believed that he had done and why he was being arrested, he denied it?

A: Yes, sir.

Q: Is it uncommon based upon your experience as a police officer for criminal suspects to say, "I didn't do it"?

A: No, it's not uncommon.

Q: Is it uncommon in today's litigious environment for criminal defendants to accuse the police of brutality?

A: No, it's not uncommon for that to happen.

Q: When, in fact, there's—and based upon your experience, do criminal defendants come into the police station and make those sorts of unfounded accusations?

A: Yes.

On cross-examination of another arresting officer who had been called as a witness by defendant, the prosecutor engaged in the following colloquy:

Q: Okay. And it's not uncommon, is it, for these guys to say "The cops beat me up"? This happens fairly frequently, doesn't it?

A: I've experienced it before, yes.

Q: When, in fact, there's no substance to it?

A: Yes, that's correct.

Q: Just seems to be a—for some of these folks, it seems to be a popular thing to say for some reason.

A: I guess for some people.

Later in the same cross-examination, the prosecutor asked the officer about defendant's statement that he did not understand his *Miranda* rights at the time of his arrest:

Q: ... [I]t's not uncommon, is it, for people to say "I don't understand my rights" or play games when it comes to advisement of their rights?

A: I don't know if that was what he was doing or not, but he was answering my questions.

Q: But in terms of the advisement of rights -

A: Yes.

Q: —is it—it's not uncommon, is it, for people to just say—in other words, "I don't want to talk, I don't understand my rights"?

A: It's—it is uncommon at least with my experience, but judging his behavior, I somewhat suspected that he might be messing with me on his not understanding.

Q: What led you to believe that?

A: He was just in a somewhat uncooperative mood and it seemed like he was coherent and listening to what I was saying, and each time he would immediately blurt back "Nope, I don't understand" to my questioning, not asking me to rephrase it or ... to read them again. So I got that feeling, but I wasn't going to push the issue.

Defendant did not object to any of this testimony. Although we thus review for plain error, we conclude there was no error, plain or otherwise, in the admission of this testimony.

■ A reviewing court must not disturb a trial court's admission of evidence pursuant to CRE 701 absent an abuse of discretion. *People v. Hoskay*, 87 P.3d 194, 197 (Colo. App.2003).

■ If a witness is not testifying as an expert, the witness's testimony in the form of opinion or inferences is limited to those opinions or inferences that are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of CRE 702. CRE 701; *People v. Stewart*, 55 P.3d 107, 122 (Colo. 2002); *Farley v. People*, 746 P.2d 956 (Colo. 1987); *People v. Hoskay, supra.*

Police officers regularly, and appropriately, offer testimony under CRE 701 based on their perceptions and experiences. *People v. Stewart, supra; People v. Gallegos*, 644 P.2d 920, 928 (Colo.1982)("That [a police officer] based his conclusion in part on his experience as a police officer does not render his testimony inadmissible."); *People v. Rogers*, 800 P.2d 1327, 1330 (Colo.App.1990)(detective's testimony about range of responses and demeanor demonstrated by child sexual assault victims admissible under CRE 701); *see also Farley v. People, supra* (victims' counselor may testify under CRE 701 as to typical reactions of rape victims); *People v. Hoskay, supra* (counselor's testimony that sexual encounter appeared to be nonconsensual was properly admitted under CRE 701). It is only where an officer's testimony is based not only on his or her perceptions, but also on specialized training or education, that the officer must be properly qualified as an expert witness. *People v. Stewart, supra*, 55 P.3d at 124.

Here, we conclude the officers stated their opinions of defendant's conduct based on their observations of him and their everyday experiences and then drew a rational conclusion about defendant's state of mind. *See People v. Hoskay, supra.* There is no indication that their opinions were based on any specialized training or education. *Cf. People v. Stewart, supra* (officer's accident reconstruction opinion testimony based, in large part, on his extensive training and edu-

cation). Thus, we perceive no error by the trial court in admitting the officers' testimony as lay opinion testimony.

■ We also reject defendant's alternative argument that the officers' testimony was not relevant, and even if it was relevant, it was inadmissible under CRE 403. Defendant did not assert these objections at trial. The testimony was relevant to rebut defendant's intoxication defense and probative of the issue whether he was capable of having the required mens rea for the charged offenses. *See* CRE 401; *People v. Kenny*, 30 P.3d 734 (Colo.App.2000). Further, because nothing in the testimony would have caused the jury to make a decision on an unfair or improper basis, the testimony was not unfairly prejudicial under CRE 403. *People v. District Court*, 869 P.2d 1281 (Colo.1994); *People v. Kenny, supra*, 30 P.3d at 740. Accordingly, under the limited circumstances here, we perceive no reversible error in the admission of this testimony.

### III. Officer's Testimony—CRE 608

■ Defendant next contends that admission of the officer's testimony that defendant was "messing" with him when defendant claimed he did not understand his *Miranda* rights constituted reversible error because it expressed the officer's opinion about defendant's truthfulness on a specific occasion. We disagree.

Defendant did not object to the officer's testimony. Thus, we review for plain error. *Wilson v. People*, 743 P.2d 415, 419 (Colo. 1987).

■ Opinion testimony regarding a witness's truthfulness on a specific occasion, rather than concerning the witness's general character for truthfulness, is inadmissible. CRE 608(a); *People v. Ayala*, 919 P.2d 830, 834 (Colo.App.1995).

Defendant argues that the officer gave opinion testimony that defendant was not telling the truth at the time of his arrest. Within the context of the trial, however, we conclude the officer's testimony was not offered to show that defendant lied to the officer about understanding his *Miranda* rights. Rather, the testimony was offered to rebut defendant's intoxication defense and to demonstrate his state of mind. In closing argument, the prosecution used the officer's testimony only briefly to rebut defendant's argument that he was too intoxicated to form the mens rea to commit the crimes charged. Contrary to defendant's assertion, nowhere in the record did the prosecution use this particular testimony to show that defendant lied to the officer at the time of his arrest. Thus, we perceive no error.

Moreover, admission of the testimony, even if error, did not rise to the level of plain error. The officer's opinion was an isolated comment in a long trial and was mentioned briefly only once in the prosecutor's closing argument. Further, on direct examination, the officer admitted that he did not know whether defendant had been "messing" with him and that there was "some speculation" in his opinion. Accordingly, we perceive no plain error in admitting the testimony. *See* Crim. P. 52(b); *People v. Morrison*, 985 P.2d 1, 6 (Colo.App.1999), *aff'd*, 19 P.3d 668 (Colo. 2000).

### IV. Prior Alcohol–Related Conviction

■ Defendant next contends that the prosecutor violated his right to testify and present a defense by erroneously stating that, if defendant elected to testify, the prosecutor intended to impeach him with his prior petty offense conviction for minor in possession of alcohol and his drinking history. We disagree.

Here, the record reflects, and defendant concedes, that the trial court gave him a proper advisement pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984). After the advisement, the prosecutor stated his intention to impeach defendant, if he chose to testify, with his prior alcohol possession conviction and other drinking history. The prosecutor stated that the evidence was relevant to rebut defendant's intoxication defense. The court invited defense counsel to address the admissibility of the evidence. However, defense counsel chose not to do so at that time. At the close of the defense case, defendant elected not to testify without requesting that the court rule on whether

such impeachment evidence would have been admissible in the event he testified.

Accordingly, defendant not only failed to object to the prosecutor's statement of intent, which would require us to review for plain error, but also failed to request a ruling from the trial court on the issue of whether the prosecution could impeach him with this evidence.

We thus conclude that defendant waived any claim on appeal that his right to testify and present a defense was violated. *See People v. Ridenour*, 878 P.2d 23, 28 (Colo. App.1994)(by not requesting a ruling on his motion to continue, defendant abandoned the motion and waived his right to assert error on appeal); *see also People v. Syrie*, 101 P.3d 219 (Colo.2004) (because the prosecution conceded an argument in the suppression hearing, the reviewing court will not resolve the issue on appeal); *Feldstein v. People*, 159 Colo. 107, 111, 410 P.2d 188, 191 (1966)(the court should be afforded the opportunity to rule on a motion or the matter will ordinarily not be considered on appeal), *abrogated on other grounds by Deeds v. People*, 747 P.2d 1266 (Colo.1987).

## V. Multiple First Degree Assault Convictions

■ Defendant contends, the People concede, and we agree that one of the first degree assault convictions must be vacated because first degree assault with intent to cause serious bodily injury and first degree assault-extreme indifference are alternative means of committing the same offense. Section 18-3-202(1)(a), (1)(c), C.R.S.2004; *People v. Baird*, 66 P.3d 183, 193 (Colo.App.2002)(vacating defendant's conviction for first degree assault-extreme indifference).

Because both convictions for first degree assault are class three felonies, and defendant received the same concurrent sentence for each conviction, regardless of which conviction is vacated, his term of imprisonment will not be affected. *See People v. Baird, supra.* Accordingly, we conclude that defendant's conviction for first degree assault-extreme indifference should be vacated. It follows that we need not consider defendant's

arguments that the evidence was insufficient to support that conviction; that the two first degree assault convictions were inconsistent; and that the two first degree assault convictions were based on identical evidence. *See People v. Baird, supra; see also People v. Abdul*, 935 P.2d 4 (Colo.1997)(generally, an issue is moot when a judgment would have no practical effect upon an existing controversy).

## VI. Convictions Based on Identical Evidence

■ Defendant contends that, because the evidence supporting his first degree assault convictions and his attempted reckless manslaughter conviction is identical, the trial court committed reversible error in instructing the jury that it could convict defendant of both offenses, and that, accordingly, he is entitled to a new trial or, alternatively, vacation of the convictions. We perceive no reversible error.

Defendant did not object to the court's instructions to the jury. Thus, we review for plain error.

■ If two or more offenses committed against a single victim are based on the same act or series of acts arising from the same criminal episode, and the evidence supporting the counts is identical, a defendant may be convicted of more than one offense, but concurrent sentences must be imposed. A court need not vacate one of the convictions. *See* § 18-1-408(3), C.R.S.2004; *Meads v. People*, 78 P.3d 290 (Colo.2003); *People v. Dotson*, 55 P.3d 175, 182 (Colo.App.2002)(convictions for aggravated robbery and second degree assault could be sustained, but court should have imposed concurrent sentences); *cf. People v. Denton*, 91 P.3d 388, 392 (Colo.App.2003)(where three convictions based on identical evidence were for the same class of felony and the trial court imposed identical concurrent sentences, vacation of two of the convictions was appropriate).

Here, defendant's convictions for first degree assault (a class three felony) and attempted reckless manslaughter (a class five felony) were arguably supported by identical

evidence. The trial court imposed a twenty-eight-year sentence on the assault conviction and a three-year sentence on the conviction for attempted reckless manslaughter to run concurrently. Accordingly, we conclude that the court did not commit plain error in instructing the jury on the assault and attempted reckless manslaughter charges and imposing concurrent sentences on the convictions.

We also note that defendant specifically asked the trial court to instruct the jury on attempted reckless manslaughter as a lesser included offense of attempted first degree murder. Defendant cannot now be heard to complain of his conviction on that lesser included offense vis-à-vis his convictions on other charges. *See People v. McCoy,* 944 P.2d 584, 589 (Colo.App.1996) (responding to defendant's argument that his convictions for first degree assault and attempted reckless manslaughter are inconsistent as a matter of law).

## VII. Double Jeopardy

Defendant makes two double jeopardy arguments concerning the first degree assault conviction. We reject the argument as to attempted reckless manslaughter, but agree as to reckless endangerment.

### A. First Degree Assault and Attempted Manslaughter

Defendant contends that his conviction and sentence for attempted reckless manslaughter must be vacated under double jeopardy principles because that offense is a lesser included offense of first degree assault with intent to cause serious bodily injury. We disagree.

▉ The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused against being twice placed in jeopardy for the same crime. U.S. Const. amend. V; Colo. Const. art. II, § 18; *Boulies v. People,* 770 P.2d 1274, 1277 (Colo. 1989). The Double Jeopardy Clause protects not only against a second trial for the same offense, but also against multiple punishments for the same offense. *People v. Leske,* 957 P.2d 1030 (Colo.1998).

▉ Ordinarily, the General Assembly does not intend to punish the same offense under two different statutes. However, it may choose to do so. Upon a clear showing of legislative intent, the General Assembly is free to authorize multiple punishments based upon the same criminal conduct without offending the Double Jeopardy Clause. In the absence of express legislative authorization, the court must ascertain whether the offenses are sufficiently distinguishable to permit the imposition of multiple punishments. *Meads v. People, supra,* 78 P.3d at 293; *Patton v. People,* 35 P.3d 124, 129 (Colo. 2001).

Here, we need not consider whether there is express legislative authorization because we are able to resolve the issue by ascertaining whether the offenses are sufficiently distinguishable to permit multiple punishment. *Meads v. People, supra; Patton v. People, supra.*

The General Assembly has expressly provided that a defendant may not be convicted of more than one offense if one offense is included in the other, as defined in § 18–1–408(5), C.R.S.2004. *See* § 18–1–408(1)(a), C.R.S.2004.

▉ Pursuant to § 18–1–408(5)(a), C.R.S. 2004, a lesser offense is included in a greater offense when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *People v. Leske, supra,* 957 P.2d at 1036.

▉ To determine whether one offense is a lesser included offense of another, we apply the strict elements test, under which we simply compare the statutory elements of the offenses. If proof of facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense, the lesser offense is included for purposes of § 18–1–408(5)(a). *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Meads v. People, supra,* 78 P.3d at 294; *People v. Leske, supra.*

Here, because we have concluded the conviction for first degree assault-extreme indif-

ference should be vacated, for purposes of the strict elements test we compare the elements of first degree assault with intent to cause serious bodily injury and attempted reckless manslaughter.

As relevant here, first degree assault is defined as follows: "A person commits the crime of assault in the first degree if ... [w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." Section 18–3–202(1)(a). "Serious bodily injury" means bodily injury that involves breaks, fractures, second- or third-degree burns, or a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of body parts or organs. Section 18–1–901(3)(p), C.R.S. 2004.

In comparison, attempted reckless manslaughter occurs when a person (1) recklessly (2) engages in conduct constituting a substantial step toward (3) causing the death of another person. *See* §§ 18–2–101, 18–3–104(1)(a), C.R.S.2004. A person acts recklessly when he or she consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists. *See* § 18–1–501(5), C.R.S.2004.

■ Here, we conclude that proof that a defendant intended to cause serious bodily injury does not necessarily establish that he or she recklessly took a substantial step toward causing the death of another person. *People v. Thomas*, 729 P.2d 972, 974 (Colo.1986)(attempted reckless manslaughter requires the accused have the intent to commit the underlying offense of reckless manslaughter). Such a connection could only be demonstrated by viewing the evidence adduced at trial, an inquiry outside the purview of the strict elements test. *Meads v. People, supra*, 78 P.3d at 295. Stated another way, the fact that a defendant causes serious bodily injury to a person, which could be anything from a minor fracture to a substantial risk of death, does not necessarily mean that he or she recklessly took a step toward causing the death of a person, or in other words, that he or she acted with a conscious disregard of a substantial and unjustifiable risk that the acts or conduct will cause the death

of another person. *See People v. Thomas, supra*.

Accordingly, we conclude that attempted reckless manslaughter is not a lesser included offense of first degree assault with intent to cause serious bodily injury, and thus, defendant's convictions of both offenses do not violate double jeopardy principles.

### B. First Degree Assault and Reckless Endangerment

Defendant also contends that his conviction for reckless endangerment must be vacated because it is a lesser included offense of first degree assault with intent to cause serious bodily injury. We agree.

Applying the same analysis as above, we determine whether the offenses are sufficiently distinguishable to permit multiple punishments, and in so doing, we apply the strict elements test.

As already noted, under § 18–3–202(1)(a), first degree assault occurs when a person with intent to cause serious bodily injury to another person causes serious bodily injury by means of a deadly weapon.

In comparison, under § 18–3–208, reckless endangerment is committed when " [a] person ... recklessly engages in conduct which creates a substantial risk of serious bodily injury to another person."

■ The establishment of every element of first degree assault with intent to cause serious bodily injury would necessarily include proving conduct that creates a substantial risk of serious bodily injury. *Meads v. People, supra*, 78 P.3d at 295; *cf. People v. Beatty*, 80 P.3d 847, 853 (Colo.App. 2003)(where recklessness establishes an element of a crime, that element is also established if the defendant acts intentionally); *People v. Berner*, 42 Colo.App. 520, 600 P.2d 112 (1979)(reckless endangerment not a lesser included offense of third degree assault, because third degree assault only requires proof of bodily injury, not proof of a substantial risk of serious bodily injury).

Thus, because reckless endangerment is a lesser included offense of first degree assault with intent to cause serious bodily injury, we

conclude that defendant's reckless endangerment conviction must be vacated.

Because we so conclude, we need not consider defendant's alternative argument that the trial court's instruction on that charge failed to identify a particular victim or require a unanimous verdict.

## VIII. Sentencing

 Finally, defendant contends that at sentencing the trial court violated his constitutional right to due process by considering an uncharged and unproven allegation of a prior assault. We disagree.

At sentencing, the prosecutor sought to present the testimony of the alleged victim in one of two prior assault cases involving defendant. Defendant objected, stating that the cases had been dismissed for insufficient evidence. The court overruled the objection and allowed the testimony.

A sentencing court is largely unconstrained as to the evidence it may consider during the sentencing phase of criminal proceedings. *People v. Vensor*, 116 P.3d 1240, 2005 WL 170753 (Colo.App.03CA1983, Jan. 27, 2005). The range is broad as to both the information considered relevant and the quality of such information. While a sentence may not be based on materially untrue evidence, a sentencing court may, in evaluating the nature of the offense and the character of the offender, consider conduct for which the offender was never charged, conduct for which charges were filed but later dismissed as part of a plea agreement, or even conduct for which the offender was charged and subsequently acquitted. *People v. Newman*, 91 P.3d 369, 372 (Colo.2004).

Here, evidence was presented of defendant's prior conduct. At the sentencing hearing, the alleged victim of the assault described her assailant and identified defendant as her assailant. Notwithstanding defendant's denial in his allocution, there is no evidence in the record suggesting that the testimony presented by the prosecution was materially untrue. Thus, we conclude the trial court did not err in considering this testimony in sentencing. *See People v. Newman, supra; People v. Vensor, supra.*

Defendant's reliance on *People v. Janke*, 720 P.2d 613 (Colo.App.1986), is misplaced. In *Janke*, unlike here, the sentencing court surmised, without any supporting evidence, that the defendant had raped other victims.

The judgment and sentence are vacated as to the convictions for first degree assault-extreme indifference and reckless endangerment. In all other respects, the judgment and sentence are affirmed.

Judge MARQUEZ and Judge CARPARELLI concur.