The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 2, 2019

## 2019COA61

## No. 16CA0400, *People v. Tresco* — Criminal Law — Sentencing; Constitutional Law — First Amendment — Freedom of Association

In the third issue of this opinion, the majority considers
whether a sentencing court erred in considering evidence of the
defendant's previous gang affiliation in a case that was not gang
related and where the defendant had left gang life.  Applying
*Dawson v. Delaware*, 503 U.S. 159 (1992), the majority concludes
that evidence of gang affiliations is not per se inadmissible during
sentencing if it relates to the nature of the offense and the
defendant's character, not merely the defendant's abstract beliefs.
The majority perceives no error here.  The majority affirms the
judgment of conviction.

The dissent concludes, as to the first issue, that a remand is required to determine whether Tresco would have waived his right to counsel and chosen to represent himself. For that reason, the dissent would not reach the other issues at this time.

COLORADO COURT OF APPEALS

**2019COA61**

Court of Appeals No. 16CA0400
City and County of Denver District Court No. 14CR6552
Honorable Morris B. Hoffman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Gabriel A. Tresco,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE FOX
Furman, J., concurs
Ashby, J., dissents

Announced May 2, 2019

Philip J. Weiser, Attorney General, John T. Lee, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Katayoun A. Donnelly, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Gabriel A. Tresco, appeals the judgment of

conviction entered on a jury verdict finding him guilty of second

degree assault.  Tresco argues that the trial court erred by (1)

denying his request that his counsel be removed; [1] (2) admitting

expert testimony that was not properly disclosed to defense counsel;

and (3) considering, at sentencing, a video recording from five years

before the events of this case in which Tresco discussed his gang

affiliation.  We reject Tresco's contentions and affirm.  The last

argument raises a novel question in Colorado.

## I.    Background

¶ 2    The prosecution charged Tresco with second degree assault for

punching a man in the face — ultimately causing nerve damage —

in in the parking lot of a bar, allegedly because the man groped

Tresco's fiancée.  On the first day of trial, Tresco notified the trial

court that he had filed a grievance against his defense counsel, a

public defender.  The trial court asked Tresco if he was requesting

that the public defender be removed, and Tresco said that he was.

_____

[1] Tresco also requested, but was denied, a continuance of the trial.
He did not appeal that denial.

1

The trial court declined to address Tresco's request at that time, stating that it would do so after jury selection. However, the trial court never addressed Tresco's request, and the public defender represented Tresco at trial.

¶ 3 The jury found Tresco guilty of second degree assault, and the trial court sentenced him to eight years in the custody of the Department of Corrections (DOC) and three years of mandatory parole.

¶ 4 Because we were unable to determine on the record before us whether the trial court erred by denying Tresco's request that his counsel be removed, we remanded the case to the trial court with directions to address whether Tresco was entitled to different appointed counsel on the first morning of trial.[2] With the benefit of the remand findings and record, we can now address Tresco's contentions.

---

[2] The remand order states: "The case is remanded to the trial court for the limited purpose of investigating the grounds for Tresco's request and ruling on whether he was entitled to withdrawal of his appointed counsel. The trial court may hold hearings and shall make new factual inquiries in conducting this inquiry."

## II. Right to Counsel

¶ 5    Tresco's appellate counsel argues that the trial court violated Tresco's Sixth Amendment rights by denying him counsel of choice. We disagree.

## A. Applicable Law

¶ 6    The Sixth Amendment provides that a criminal defendant has the right to the assistance of counsel. U.S. Const. amend. VI. Although this right applies equally to indigent and non-indigent defendants, it manifests itself in different ways.

¶ 7    Under the Sixth Amendment, non-indigent defendants have the right to counsel of their choice. *See People v. Ronquillo*, 2017 CO 99, ¶ 16. In contrast, an indigent defendant who requests court-appointed counsel does not get to choose which court-appointed lawyer will represent him. *Id.* at ¶ 18. The Sixth Amendment instead guarantees that indigent defendants receive constitutionally effective representation from conflict-free counsel. *Id.* at ¶ 19; *see also People v. Shreck*, 107 P.3d 1048, 1055 (Colo. App. 2004).

¶ 8    "When an indigent defendant objects to his court-appointed counsel, the trial court must investigate the reasons for the

dissatisfaction." *People v. Johnson*, 2016 COA 15, ¶ 30. This is a fact-intensive investigation into the details of the disagreement or conflict between the defendant and appointed counsel. *See People v. Bergerud*, 223 P.3d 686, 694 (Colo. 2010). "Unless the complaint underlying a request for substitution of counsel is sufficiently detailed, the court may not rule on the motion without conducting a proper hearing at which *both attorney and client testify* as to the nature of their conflict." *Id.* (citation omitted). The decision on whether to grant a defendant's request for substitute appointed counsel is within the trial court's discretion, and we will not disturb such a ruling absent an abuse of that discretion. *See Johnson*, ¶ 29.

¶ 9     Tresco was represented by appointed counsel at trial. On the first morning of trial, he did not ask to replace his appointed counsel with nonappointed counsel of his choice. Nor did he ask to represent himself. Tresco's appellate counsel's argument that his Sixth Amendment right to counsel of choice was violated is therefore inapposite to Tresco; because Tresco had appointed counsel, not private counsel, he did not have the right to counsel of his choice under the Sixth Amendment.

¶ 10    However, the Sixth Amendment did guarantee Tresco conflict-free appointed counsel who would represent him effectively. Tresco asked for replacement of his public defender due to an asserted conflict.

## B. Trial Record

¶ 11    On the first morning of trial, Tresco informed the trial court that he had filed a grievance against his attorney and the following exchange occurred:

> THE COURT: [I]s he intending to now file a motion on the morning of trial to require disqualification of counsel? Is that the intention here?
>
> [TRESCO]: I would like for you to review that first to see which way I should go, because I don't really know —
>
> THE COURT: Well, I'm not here to give you legal advice, sir. I'm sorry. That's not appropriate for me to do. And this document is essentially completely irrelevant to me and these proceedings.
>
> [TRESCO]: Actually, there's some relevance because, Your Honor, these are the things that led me to believe —
>
> THE COURT: It would only be relevant if you're filing or requesting that your counsel be withdrawn on the morning of trial.

[TRESCO]: Then, yes. Let's proceed with that, Your Honor.

¶ 12     The trial court then explicitly recognized that it was required to evaluate Tresco's request and stated that it would do so after jury selection. But, the trial court never addressed Tresco's request.

¶ 13     By not ruling on the request, the trial court implicitly denied Tresco's request for replacement of his public defender. But, because the court did not investigate the factual basis for the request, we had no record from which to determine whether the court's implicit denial was an abuse of discretion. Having remanded with directions to investigate the basis for Tresco's request and to determine whether he was entitled to replacement of his public defender, we now examine the findings and the supplemented record.

## C. Remand Record

¶ 14     After two half-day hearings where the remand court heard testimony from Tresco and his trial counsel, Elizabeth Atkinson, and entertained extensive argument from appellate counsel, the court found as follows:

- Tresco "likely asked for withdrawal of the public defender on the morning of trial because he lacked confidence in her representation, and not because he wanted to testify inconsistently with a defense theory she insisted on presenting — as he now claims — and not because of a conflict of interest, a complete breakdown in communication, or some other irreconcilable conflict."

- Tresco "was not entitled to withdrawal of his public defender."

¶ 15    The grievance Tresco offered to the trial court was not part of our record before the remand. But, the remand court has now appropriately supplemented our record with the contents of that grievance, which reads as follows:

> I'm having a break down in communications with Atkinson. Since May 2015 we have had minimal contact in regard to putting together a defense strategy(s) for my case. In fact I believe that she does not have my best interest in mind in preparing my case for trial. On the few occasions that she did interact with me, she never seemed confident in defending me in this case, suggesting that I take the plea bargain that was offered to me by the prosecutor. I [gave] her a list of witnesses that

7

> are [beneficial] to my defense but she shunned all the witnesses that I presented to her, saying that she didn't believe they were credible. Furthermore[,] she contradicted herself by saying she tried contacting a certain witness several times . . . . The witness stated that the only person to contact her regarding my case was the District Attorney[']s office. I believe this to be a violation of my civil rights and also my due process.

¶ 16    Based on our independent review of the record, as supplemented by the remand proceedings, we conclude that the remand court's findings enjoy record support and reveal no abuse of discretion. *Johnson*, ¶ 29. Accordingly, we defer to those findings, including the remand court's explicit and implicit credibility determinations. *See People v. Travis*, 2019 CO 15, ¶ 12 (a reviewing court should examine the "'total circumstances manifested by the record in [the] case' and 'particularly . . . the reasons presented to the trial judge at the time'" the right to counsel was allegedly denied) (citations omitted); *see also People v. Harlan*, 109 P.3d 616, 627-28 (Colo. 2005) ("[W]e cannot second-guess determinations of the trial court regarding witness credibility.").

¶ 17    As the remand court aptly recognized, the grievance says nothing about Atkinson preventing Tresco from testifying about his claimed "heat of passion" defense. Instead, the grievance indicates dissatisfaction with Atkinson's level of confidence. But a lack of confidence in a defendant's ability to prevail at trial does not automatically create a conflict, nor does it indicate that the lawyer is not competent to defend a client. *See People in Interest of C.Z.*, 262 P.3d 895, 902 (Colo. App. 2010) ("An attorney's disagreement with the client regarding the strength of the case does not constitute an actual conflict of interest requiring the appointment of substitute counsel."); *People v. Hodges*, 134 P.3d 419, 425 (Colo. App. 2005) ("Neither the existence of animosity between defendant and [counsel] nor [counsel's] asserted disagreement with defendant regarding the strength of defendant's case constitutes an actual conflict of interest requiring the appointment of substitute counsel."), *aff'd*, 158 P.3d 922 (Colo. 2007); *People v. Garcia*, 64 P.3d 857, 863 (Colo. App. 2002) (the trial court did not abuse its discretion in denying defendant's motion to appoint private counsel where the defendant alleged that his counsel, among other things, repeatedly told defendant "there is nothing you can do"); *People v.*

*Apodaca*, 998 P.2d 25, 28 (Colo. App. 1999) (the trial court did not abuse its discretion in declining to appoint substitute counsel where the defendant objected to "defense counsel's 'personal disbelief' of defendant's version of the events" based on defense counsel's statements during the sentencing hearing); *see also McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981) (the defendant's "loss of trust" in counsel did not give rise to good cause for substitution of counsel). It is a lawyer's job to assess the best witnesses to present at trial, and there is nothing inherently improper about a lawyer opting not to present a witness she concludes is not credible. *See Dunlap v. People*, 173 P.3d 1054, 1075 (Colo. 2007) (recognizing that if trial counsel had a reasonable basis for a strategic decision, then the decision enjoys a strong presumption of correctness and the inquiry generally ends).

¶ 18    While the remand court accepted that Tresco was not entirely satisfied with his attorney, it found that Tresco and his counsel had not experienced a "true breakdown in communications" requiring counsel's removal. *See Bergerud*, 223 P.3d at 694. The remand court also found no indication that counsel was prevented from effectively representing her client. The mere filing of a grievance

10

because of disagreement as to trial tactics does not, without more, demonstrate that the relationship has deteriorated to a point at which counsel is unable to give effective aid to the client.  *People v. Martinez,* 722 P.2d 445, 446 (Colo. App. 1986); *see also United States v. Holman,* 314 F.3d 837, 845-46 (7th Cir. 2002) (fact that defendant filed disciplinary inquiry against his attorney is "not enough to establish an actual conflict of interest"); *United States v. Burns,* 990 F.2d 1426, 1437-38 (4th Cir. 1993) (grievance filed against defendant's attorney three days before trial did not create a conflict of interest); *Mathis v. Hood,* 937 F.2d 790, 796 (2d Cir. 1991) (frivolous complaint against attorney does not create conflict of interest); *cf. United States v. Patterson,* 576 F.3d 431, 436-37 (7th Cir. 2009) (district court properly exercised discretion to reject defendant's pro se motion to withdraw guilty plea without a hearing because he was represented by counsel); *Perry v. State,* 464 S.W.2d 660, 664 (Tex. Crim. App. 1971) (filing of civil case against counsel did not create a conflict of interest).  Rather, the court concluded that there was some disagreement concerning trial strategy and that counsel properly exercised her strategic decision-making authority.  The remand court could not fault Atkinson's strategic

choice not to proceed on a "heat of passion" theory where the evidence revealed that Tresco's then fiancée was allegedly groped inside the bar they were patronizing, but the assault occurred outside, in the parking lot and not contemporaneously with the groping.

¶ 19     In addition to claiming he wanted to proceed on a heat of passion defense — admitting that he injured the victim, but claiming it was for a legitimate reason — Tresco now suggests that, if deprived of the opportunity to secure alternate counsel, he would have opted to represent himself.  Although the remand court's order does not explicitly address this issue, the court implicitly rejected any claim that was not presented to the trial court, including any later claims purporting to supplement the grievance letter that formed the basis at trial for Tresco's request to remove Atkinson. *Cf. Garcia*, 64 P.3d at 863 (if substitution of counsel is not warranted, a defendant continues with retained counsel or may ask to represent himself).  Indeed, during the remand proceedings the court noted that Tresco's story regarding his reasons for dissatisfaction with Atkinson had changed over time, which necessarily factored into the court's credibility calculus:

Mr. Tresco has had three opportunities to state: Atkinson misrepresented me; she was not effective, she was not doing what I wanted, I want a different attorney. And the first time we're hearing the reasons for that and the things that he would have argued on that day was because she had a different theory [ — ]that he demanded to testify and she wouldn't allow that, she put him in a position he couldn't, and that she [insisted against] pursuing heat of passion despite all of the other information that he had given . . . . That's inconsistent with him saying "I want a different attorney" for entirely different reasons . . . there is no mention of the theory that today, now, in hindsight, which, in candor, there's credibility issues just to begin with when someone comes in and says, "I know, If I can find a basis to say my attorney should have been allowed to withdraw, I get a new trial; and, if I don't, I'm stuck with this conviction. It automatically raises a credibility issue. And to say this is not an argument you had made when you were raising it in the past, it's not decisive, but it is something I'm considering . . . . I'm not aware of anything in the past where he has said, "I wanted to get rid of Atkinson because it was critical to me to pursue one theory, and she wanted to pursue the other."

¶ 20    The remand court's order clearly articulates why Tresco was not entitled to have Atkinson replaced as his counsel:

> [T]o be entitled to a different attorney, [a defendant] must have a well-founded reason for believing that the appointed attorney cannot or will not completely represent him.

13

> *People v. Arguello*, 772 P.2d 87, 94 (Colo.
> 1989). This requires that he establish good
> cause, such as a conflict of interest, a
> complete breakdown of communication or an
> irreconcilable conflict that would lead to an
> unjust verdict. *Id.* There is no evidence of any
> conflict of interest[] between Defendant and
> Atkinson at the time of trial. Although the
> grievance begins with a reference to a
> breakdown of communication, the evidence
> indicates that [there] was not actually such a
> breakdown, let alone a total breakdown that
> would lead to an unjust verdict. Finally,
> although there were disagreements between
> the Defendant and Atkinson on issues such as
> what witnesses to call, and the Defendant did
> not have faith in Atkinson's representation,
> there were no conflicts . . . that would have
> prevented her from effectively representing
> him. As such, the Defendant was not entitled
> to withdrawal of Atkinson as his court-
> appointed counsel.

Once the remand court concluded that Tresco was not entitled to

have Atkinson removed as his counsel, the remand court had no

duty to further inquire about Tresco's preferences. Appellate

counsel suggests that the remand court should also have asked

whether Tresco would have chosen to represent himself instead of

proceeding with Atkinson. But, at trial, Tresco never asked to

proceed pro se, and the remand court found no "good cause" to

remove Atkinson. The inquiry therefore ends there. We disagree

14

with the dissent's conclusion that yet another remand is needed where the remand court did just what this court asked of it. That those findings are not what Tresco desired does not entitle him to a further remand.

### III.   Right to Confrontation

¶ 21    Tresco next argues that the trial court violated his confrontation rights by erroneously admitting an expert's testimony on nerve damage to the victim's face. We disagree.

### A. Preservation and Standard of Review

¶ 22    The parties agree that Tresco preserved this issue for appeal.

¶ 23    We review confrontation claims de novo. *People v. Merritt*, 2014 COA 124, ¶ 25. Because Tresco preserved this issue for appeal, we also review for constitutional harmless error. *Id.*; *see also Hagos v. People*, 2012 CO 63, ¶ 11 ("These errors require reversal unless the reviewing court is 'able to declare a belief that [the error] was harmless beyond a reasonable doubt.'" (citation omitted)). Under this standard, the People must show that the error was harmless beyond a reasonable doubt — meaning that there is no reasonable possibility that it contributed to the conviction. *Hagos*, ¶ 11.

## B. Law and Analysis

¶ 24    A defendant has the right to confront and effectively cross-examine witnesses.  *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16; *see also People v. Herrera*, 87 P.3d 240, 253 (Colo. App. 2003) ("The right of a defendant to confront adverse witnesses is guaranteed by the Sixth and Fourteenth Amendments and includes an opportunity for effective cross-examination.").  However, a defendant's confrontation right is a trial right; "it is not 'a constitutionally compelled rule of pretrial discovery.'" *People v. Spykstra*, 234 P.3d 662, 670 (Colo. 2010) (citation omitted).  Accordingly, effective cross-examination, under the Confrontation Clause, does not require "access to every possible source of information relevant to cross-examination."  *Id.* (citation omitted).

¶ 25    Tresco argues that the trial court violated his confrontation rights by erroneously admitting an expert's testimony on the victim's nerve damage.  Because the prosecution's discovery disclosure of the expert's notes and medical reports did not mention nerve damage, Tresco reasons that his counsel had no opportunity to review this opinion and therefore could not effectively cross-examine the expert.

16

¶ 26    But it is undisputed that the prosecution gave Tresco's counsel a copy of the expert's notes and reports. *See* Crim. P. 16(I)(a)(1)(III) (the prosecuting attorney must make available to the defendant "[a]ny reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons"). And while Tresco initially filed a discovery motion six months before trial — requesting that the prosecution provide him with a written summary of the expert's testimony — he never raised the issue again to alert the court that it had not yet ruled on his motion.

¶ 27    Given that Tresco had the opportunity to cross-examine the expert witness, *see, e.g., People v. Pineda*, 40 P.3d 60, 67 (Colo. App. 2001) ("[B]ecause the hearsay declarant testified at trial and was subject to cross-examination, we reject defendant's argument that her right to confrontation was violated."), and he failed to follow up on his discovery motion, we cannot conclude that the court violated his confrontation rights by admitting the expert's testimony on nerve damage. *See People v. Rodriguez*, 209 P.3d 1151, 1160 (Colo. App. 2008) ("[I]t was incumbent upon defendant to press for a

definitive ruling before being able to claim on appeal that the court somehow erred [in admitting testimony].”), *aff’d*, 238 P.3d 1283 (Colo. 2010); *People v. Anderson*, 837 P.2d 293, 299 (Colo. App. 1992) (“[Any] claim by the defendant at the appellate level that he was unfairly surprised and unable to prepare adequately for cross-examination is thoroughly discredited by his failure to move for a continuance at the trial level.”) (citation omitted).

## IV.  Sentencing

¶ 28    Tresco’s final argument is that the trial court erred in considering evidence of his previous gang affiliation — video clips of Tresco from the television show *Gangland*[3] — in sentencing. Following *Dawson v. Delaware*, 503 U.S. 159 (1992), we conclude that evidence of gang affiliation is not per se inadmissible during sentencing if it is related to the nature of the offense and the defendant’s character, not merely his abstract beliefs.  Thus, we perceive no error.

---

[3] *Gangland* was a History Channel show airing from 2007-2010 that “[f]ollow[ed] the evolution and power of gangs across the United States.”  IMDb, *Gangland*, https://perma.cc/7AAG-GAKM.

18

A.    Preservation, Standard of Review, and Applicable Law

Tresco objected to the admission of the video clips on relevancy but not on the constitutional grounds — freedom of association — he now asserts. We review unpreserved constitutional claims for plain error. *Hagos*, ¶ 14 ("We reverse under plain error review only if the error 'so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.'") (citation omitted). To the extent Tresco challenges this admission as evidentiary error, our review is for an abuse of discretion. *People v. Beatty*, 80 P.3d 847, 855 (Colo. App. 2003).

Because sentencing is by its nature a discretionary function and the sentencing court is more familiar with the defendant and the case than the appellate court, the sentencing court "is accorded wide latitude in its sentencing decisions." *Id.* When exercising its discretion, the sentencing court must "consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law, the deterrence of crime, and the protection of the public." *People v. Maestas*, 224 P.3d 405, 409 (Colo. App. 2009).

19

¶ 31    "Only in truly exceptional situations" will we substitute our judgment for that of the sentencing court and overturn a sentence. *Beatty*, 80 P.3d at 855.  If the sentence falls within the statutory range and the record reflects that the sentence is based on appropriate considerations and is factually supported by the circumstances of the case, we must uphold the sentence.  *Maestas*, 224 P.3d at 409-10.

¶ 32    In sentencing, "the court shall afford the defendant an opportunity to make a statement . . . and to present any information in mitigation of punishment.  The state also shall be given an opportunity to be heard on any matter material to the imposition of sentence."  Crim. P. 32(b)(1).  The sentencing court should consider the nature of the offense and the offender's conduct.  *People v. Tallwhiteman*, 124 P.3d 827, 837 (Colo. App. 2005).  While the court may not base its determination on materially untrue evidence, it may "consider conduct for which the offender was never charged, conduct for which charges were filed but later dismissed as part of a plea agreement, or [in some circumstances] even conduct for which the offender was charged and subsequently acquitted."  *Id.* (citing *People v. Neman*, 91 P.3d

369, 372 (Colo. 2004)); *see, e.g., Beatty*, 80 P.3d at 856 (the trial court correctly considered evidence that the defendant was involved in a separate incident with the victims the week before the shooting); *cf. People v. Young*, 987 P.2d 889, 894 (Colo. App. 1999) (while a sentencing court may consider a defendant's lack of remorse, it may not consider his refusal to admit guilt).

¶ 33    Tresco's reliance on *Dawson*, 503 U.S. at 166, for the proposition that the sentencing court violated his right to freedom of association by considering evidence of his unrelated gang membership at sentencing is misplaced.

¶ 34    *Dawson* held that evidence of a defendant's membership in the Aryan Brotherhood was improperly introduced at sentencing. *Id.* at 165.  There, during sentencing the prosecution read a brief stipulation that the Aryan Brotherhood was a prison gang originating in California in the 1960s that entertained white supremacist beliefs, and that there was a separate gang in the Delaware prison system (where the defendant was previously incarcerated) that called itself the Aryan Brotherhood.  *Id.*  The prosecutor also introduced evidence that Dawson had the words "Aryan Brotherhood" tattooed on his hand and a tattoo referencing

being a disciple of Satan on his stomach. *Id.* at 162. The Court concluded that the narrowness of the stipulation "left the Aryan Brotherhood evidence totally without relevance to Dawson's sentencing proceeding." *Id.* at 165. As the evidence did not show that the Aryan Brotherhood had committed or endorsed any unlawful or violent acts or was tied to the murder at issue in the case, admitting the evidence violated Dawson's First Amendment rights because it proved nothing more than his "abstract beliefs." *Id.* at 166-67. But, the Court did not erect a per se barrier against the admission of gang-affiliation evidence, or other beliefs protected by the First Amendment, acknowledging that "[i]n many cases, for example, associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society." *Id.* at 166.

¶ 35    Cases after *Dawson* have reaffirmed that a sentencing court may consider evidence of a defendant's gang membership if the evidence goes beyond the abstract beliefs of the gang. *See, e.g.,* *State v. Cooks*, 720 So. 2d 637, 650 (La. 1998) (the case was the "much different case" hypothesized in *Dawson* where the evidence established a relevant link between the defendant's character,

22

sentencing, and gang membership); *Cruz-Quintanilla v. State*, 137 A.3d 274, 277-78 (Md. Ct. Spec. App. 2016) (evidence of gang membership showed the defendant endorsed not just the gang's beliefs but also its criminal activities), *aff'd,* 165 A.3d 517 (Md. 2017).

¶ 36    Thus, the relevant inquiry is whether the defendant's gang affiliation, even a past affiliation, sheds light on the defendant's character or other factors related to sentencing.  *Segovia v. State*, 467 S.W.3d 545, 554 (Tex. App. 2015) ("[C]ourts have long held that testimony regarding a defendant's affiliation with a gang may be relevant and admissible at the punishment phase to show the defendant's character."); *Ho v. State*, 171 S.W.3d 295, 305 (Tex. App. 2005) ("Even if appellant was no longer affiliated with the gang at the time of the shooting, evidence that he was a gang member is relevant — and thus admissible at punishment — because it relates to his character."); *see also People v. Banks*, 632 N.E.2d 257, 265 (Ill. App. Ct. 1994) (the sentencing court did not improperly consider the defendant's gang membership and reaffirming that a sentencing court may consider "the general moral character of the offender, his mentality, his habits, his social environments, his

abnormal tendencies, his age, his natural inclination or aversion to commit crime and the stimuli which motivated his conduct"); *Lay v. State*, 886 P.2d 448, 453 (Nev. 1994) (evidence of the defendant's gang membership was admissible to show his "future dangerousness to society").

¶ 37    Courts also consider whether evidence of the defendant's gang affiliation was a central or driving factor in the sentencing decision. *See People v. Sims*, 931 N.E.2d 1220, 1233-34 (Ill. App. Ct. 2010) (the sentencing court's possibly inappropriate comment about "gang-related activity" was not error where the gang reference was not the dominant factor in sentencing the defendant); *Cruz-Quintanilla*, 137 A.3d at 278 ("Even assuming arguendo, that the testimony regarding MS–13 and appellant's membership in MS–13 was improper, the sentencing court gave no indication that it was giving appellant an increased sentence due to his gang membership[.]").  And courts consider whether the defendant was clearly prejudiced by the admission of evidence regarding his gang affiliation.  *See People v. Zapata*, 808 N.E.2d 1064, 1071 (Ill. App. Ct. 2004) (vacating the sentence where "the trial judge improperly relied on her own personal disdain for gang violence, where there

was no evidence that the murder was related to gang activity"); *see also Ochoa v. Workman*, 451 F. App'x 718, 725-27 (10th Cir. 2011) (even though evidence of the defendant's gang membership was "at best, of marginal value," the record made clear he suffered no prejudice from its admission).

### B. Analysis

¶ 38 Considering this legal landscape, we turn to the specifics of Tresco's sentencing. At the sentencing hearing, the prosecutor played six clips from a 2010 episode of *Gangland* in which Tresco discussed his membership in the North Side Mafia. The prosecutor introduced the video because Tresco used language in it she thought "the [c]ourt would find interesting in determining" an appropriate sentence.

¶ 39 In one clip, Tresco bragged about punching a taxi driver and said he served three years in prison for the incident. In response, Tresco called two witnesses who worked at Life Line, an organization that helps individuals exit gang life. They both stated that Tresco was no longer a member of the North Side Mafia, a decision he made voluntarily because he wanted to turn his life around. In their opinion, Tresco would not benefit from

incarceration because it would exacerbate the rage and mental health issues he faced.

¶ 40 The court also heard testimony from Tresco's brother and Tresco himself, and it considered Tresco's presentencing investigation report (PSIR) detailing Tresco's criminal history, including four prior felony convictions and misdemeanor assaults.

¶ 41 Because a second degree assault conviction carries a mandatory sentence to DOC custody, the prosecution asked for twelve to sixteen years and Tresco asked for the five year minimum. In reaching its decision, the court stated that Tresco continued to blame others; that he was manipulative; and that while it believed Tresco "sincerely and genuinely did renounce gang life," he had a history of committing assaults and was a "very angry, violent, assaultive person" who "committed a very violent act." Thus, opined the court, "for the safety of the community" and considering his "background and facts of the case," sentencing Tresco to eight years in DOC custody with three years of mandatory parole was appropriate.

¶ 42 In light of this record, we conclude the court properly considered the nature of the offense, Tresco's character and

rehabilitative potential, his disrespect for the law, and the interests of deterring crime and protecting the public. *Maestas*, 224 P.3d at 409. Tresco's sentence falls within the statutory range of five to sixteen years and is, in fact, on the lower end of the range and less than the sentence the prosecution requested. *See id.* at 409-10. Although there was no argument at trial that the crime at issue was gang-related, Tresco was convicted of second degree assault and the evidence of his prior gang affiliation properly related to his character — as relevant to sentencing — because it shed light on his tendency toward aggression, rage, and assaultive behavior. *See, e.g., Cooks,* 720 So. 2d at 650. The video clips and witnesses from Life Line — coupled with Tresco's act of violently punching someone outside a bar — supported an inference that Tresco has a disposition toward assaultive behavior and remains a future danger to society, proper considerations for the court in crafting a sentence. *See Tallwhiteman,* 124 P.3d at 837 (court may consider uncharged conduct); *Lay,* 886 P.2d at 453.

¶ 43    Further, the gang-affiliation evidence did not seem to be the dispositive factor in the court's sentencing decision; indeed, the court affirmed that it believed Tresco had left gang life behind him

and made no further comments on his past affiliation. *See Cruz-Quintanilla*, 137 A.3d at 278; *cf. Zapata*, 808 N.E.2d at 1073 ("[T]he transcript shows that the trial judge's distaste for gang violence was the dominant factor in the determination of defendant's sentence.").

¶ 44 Finally, we cannot conclude that Tresco was prejudiced by the video clips. Because the PSIR noted Tresco's previous affiliation and included his criminal history of previous assaults, like the one he bragged about in the video clips, *see Ochoa*, 451 F. App'x at 726-27, even without the disputed video clips, the court would likely have learned this information about Tresco.

¶ 45 In sum, because the evidence of Tresco's previous gang affiliation related to the nature of the offense and Tresco's character, not merely his abstract beliefs, we perceive no error in its admission.

## V. Conclusion

¶ 46 Having concluded the trial court did not err, we affirm the judgment and sentence.

JUDGE FURMAN concurs.

JUDGE ASHBY dissents.

28

JUDGE ASHBY, dissenting.

¶ 47    On the morning of trial, Tresco asked to fire his appointed counsel. But before any discussion occurred as to why Tresco wanted his attorney to be removed, and what he would choose to do if she was, the trial court cut off the discussion and stated that it would deal with his request later. It never did. The trial court was required to address whether Tresco was entitled to have his counsel removed. That was the basis for the first remand order. But we then made our own mistake when we so narrowly framed the issue that the remand court[1] was to address. I believe that the majority's refusal now to address the issue of Tresco's right to represent himself unfairly requires Tresco to pay the price for both mistakes.

¶ 48    The majority holds that Tresco was not entitled to fire his attorney and be appointed substitute counsel. I agree. Despite Tresco raising the issue on remand, however, no court has yet addressed whether Tresco was entitled to fire his appointed counsel

---

[1] To avoid confusion, I use the term "remand court" to refer to the judge who presided over the hearings on remand. I use "trial court" to refer to the judge who presided over the trial.

and represent himself.[2]  According to the majority, we need not address this issue.  It is from this conclusion that I respectfully dissent.

¶ 49      A defendant's Sixth Amendment right to counsel also includes the right to self-representation.  *See People v. Davis*, 2015 CO 36M, ¶ 15.  If the defendant wants to remove appointed counsel and represent himself, a showing of good cause is unnecessary.  *See People v. Campbell*, 58 P.3d 1148, 1156 (Colo. App. 2002).  Instead, a defendant is entitled to fire counsel and represent himself if his decision to do so is knowing, intelligent, and voluntary.  *Id.*  The court may not deny a defendant's request to represent himself just because the defendant seeks to pursue an ill-advised legal strategy or because self-representation is contrary to the defendant's best

---

[2] It is unclear from the current record whether Tresco would have asked to retain counsel if his request to have his attorney removed had been denied at trial.  There was argument made on the need to make findings whether Tresco would have retained counsel, but the testimony as to whether he would have made that request is unclear and the remand court declined to expand the scope of the hearing or its findings because it believed to do so was outside the scope of the remand order.  Because it would be an issue that could arise on remand, if I were writing for the majority, I would give the remand court authority to address this issue as the need arises.

interests.  *See Faretta v. California*, 422 U.S. 806, 834 (1975).

Because the constitutional issues related to a defendant's right to

counsel are so significant, the supreme court has provided guidance

as to the process trial courts should use in resolving these issues.

¶ 50    In *Ronquillo v. People*, 2017 CO 99, our supreme explained the

process a trial court must follow when a defendant asks to fire

retained counsel and receive substitute appointed counsel.  The

court first recognized that a defendant may fire retained counsel for

any reason.  *Id.* at ¶ 29.  But because circumstances may prevent

the defendant from being represented in the way he desires going

forward, the supreme court made clear that the trial court has a

duty to ensure that the defendant understands the consequences of

firing retained counsel before doing so.  *Id.*  "Of course, a trial court

can't explain the consequences of firing counsel until it has

determined what those consequences will be.  So, when considering

a motion to fire counsel (however framed), a court should first

ascertain how the defendant wishes to be represented going

forward."  *Id.* at ¶ 30.

¶ 51    The supreme court then more fully described how the court

should structure its discussion with the defendant.  If the

defendant wants to represent himself, he may do so, provided that he knowingly, intelligently, and voluntarily waives his right to counsel. *Id.* at ¶ 32. If the defendant seeks substitute appointed counsel, the court must determine whether the defendant qualifies for appointed counsel and whether it is appropriate to allow the defendant to receive substitute appointed counsel under the circumstances. *Id.* at ¶¶ 33-35. If the defendant is not entitled to substitute appointed counsel, the court should explain to the defendant that he must choose between keeping current counsel and representing himself. *Id.* at ¶ 40.

¶ 52 I recognize that *Ronquillo* addressed a situation in which the defendant sought to fire retained counsel and receive appointed counsel. But *Ronquillo* does not start from scratch to build the described procedural framework. The origins of this framework are rooted in prior cases, such as *People v. Arguello*, 772 P.2d 87 (Colo. 1989), which recognized that the trial court has an active, not passive, role in ensuring that a defendant understands the consequences of firing his retained or court-appointed counsel. It is the court's affirmative duty to explain, not the defendant's responsibility to research, the consequences of his request. And the

trial court cannot explain those consequences without first determining how the defendant wants to proceed after firing his attorney.

¶ 53   The supreme court in *Arguello* addressed a request identical to Tresco's: a defendant's request to fire appointed counsel. The court held that when an indigent defendant asks to fire appointed counsel, "the trial court has the obligation to inquire into the reasons for the dissatisfaction." *Id.* at 94. If there is no good cause for granting the defendant substitute appointed counsel, "a defendant must be given 'a clear choice' between present counsel and waiver of counsel." *Id.* (quoting *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987)).

¶ 54   Here, Tresco unequivocally asked to fire his appointed trial counsel on the first day of trial. As soon as he made this request, the trial court stated that it would deal with it later, and never did. Because of this error, Tresco was never given the choice of continuing with his appointed counsel or representing himself.

¶ 55   The majority concludes that this was not a problem. First, without explicitly saying so, it appears that the majority stacks assumption upon assumption to conclude that Tresco was only

33

asking to fire his appointed counsel and have other counsel appointed. I agree that the record at trial shows that Tresco asked only to fire his appointed counsel and did not indicate whether he sought substitute appointed counsel or to represent himself. Based on the fact that Tresco had filed a grievance against his appointed counsel, the majority assumes that he only sought to fire his appointed counsel "due to an asserted conflict." *Supra* ¶ [II.A]. Based on this assumption, the majority seems to further assume that Tresco only wanted new appointed counsel and did not want to represent himself. These assumptions are not supported by the record. In fact, the only evidence in the record (Tresco's testimony on remand) contradicts these assumptions.

¶ 56 Second, the majority concludes that because Tresco was not entitled to substitute counsel, and he never asked to represent himself at trial, no further inquiry is necessary. But as explained above, if a court determines that a defendant who has asked to fire his appointed counsel is not entitled to substitute counsel, "a defendant must be given 'a clear choice' between present counsel and waiver of counsel." *Arguello*, 772 P.2d at 94 (quoting *Padilla*, 819 F.2d at 955). Tresco told the trial court he needed help in

34

understanding what his options were when he showed his grievance to the trial court and asked to have his counsel removed. He was relying on the trial court to revisit the issue. It was the trial court's duty to determine how Tresco wanted to proceed. The trial court inarguably failed to discharge this duty. By stating that no further inquiry is required because "Tresco never asked to proceed pro se [at trial]," *supra* ¶ [II.C], the majority holds Tresco responsible for the trial court's error.[3]

¶ 57    Third, the majority concludes that the remand court did exactly what we asked it to do and therefore another remand is inappropriate. It is true that our remand order was framed narrowly and unfortunately did not anticipate the additional issues that arose on remand. And based on that lack of clarity, the remand court understandably believed that it could address only whether Tresco was entitled to fire his appointed counsel and

---

[3] The majority states that "Tresco never asked to proceed pro se [at trial]," *supra* ¶ [II.C], without explaining the legal significance of that fact. I suppose it is possible that the majority is suggesting, without analysis or explanation, that Tresco waived, forfeited, or abandoned his right to represent himself. I would disagree with each of these suggestions.

receive substitute appointed counsel. Despite Tresco's repeated objections, the remand court explicitly declined to address whether, if Tresco was not entitled to fire his appointed counsel, he would have made the choice to represent himself. But it recognized further findings might be necessary: "[I]f the court of appeals needs factual findings on [what Tresco would have done if the trial court had addressed and denied his request to fire his counsel], unfortunately they'll have to remand the case for factual findings on that issue."

¶ 58 And while the majority suggests otherwise, the remand court's finding that there was no good cause to remove Tresco's appointed counsel has nothing to do with whether Tresco could choose to represent himself. Though some would consider such a choice ill-advised, it was Tresco's choice to make. As the remand court anticipated, further findings are required.

¶ 59 Moreover, Tresco testified on remand that, had he been given the choice between keeping his appointed counsel or representing himself on the morning of trial, he would have chosen to represent himself. I understand how Tresco's statement that he would have chosen to represent himself at trial, made after a trial at which he

was convicted, might appear to be self-serving. But it was the trial court's failure to properly address Tresco's request to fire his appointed counsel that prevented Tresco from knowing and stating his choice at the appropriate time.

¶ 60    By concluding that another remand is required, I recognize the challenges inherent in constructing a record that should have been made years ago. But those challenges are of the trial court's making — not Tresco's. I would therefore remand the case to the trial court with directions to make the necessary findings and determine whether Tresco would have effected a knowing, voluntary, and intelligent waiver of his right to counsel and represented himself if he was not entitled to substitute appointed counsel. I would further give the remand court authority to resolve any related right to counsel issues that may arise. Accordingly, I would not reach the other issues at this time.