24CA1643 Peo in Interest of LG 06-04-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1643
El Paso County District Court No. 22JD567
Honorable Lin Billings Vela, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of L.G.,

Juvenile-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Sullivan and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Petitioner-Appellee

The Griffin Law Firm, PC, William Thomas Griffin, Colorado Springs, Colorado, for Juvenile-Appellant

¶ 1    Defendant, L.G., a minor, appeals his adjudication as an aggravated juvenile offender and violent juvenile offender and the sentence entered after a jury found him guilty of unlawful sexual contact causing submission through force.  We affirm.

## I.    Background

¶ 2    The charges in this case stem from an incident that occurred when L.G. was sixteen and the victim, M.G., was eighteen.  After meeting M.G. at work, L.G. invited her to his apartment to sit in the apartment complex's hot tub.  While sitting on a chair in the pool area, L.G. touched M.G.'s buttocks, repeatedly pushed her down when she tried to stand up, put his hands inside her bikini bottom, and touched her vagina after she said no.  He then pulled down M.G.'s bikini top and grabbed her breasts.  After M.G. agreed to drive L.G. to his nearby building, L.G. pulled her out of the driver's seat, pushed her against the car, and grabbed her butt again.

¶ 3    M.G. went to the police a few days later.  During a pretextual phone call, L.G. apologized and admitted to touching M.G. in a sexual way, pulling down her bikini and grabbing her breast, forcing her down when she attempted to stand, and persisting when

1

she said no.  A surveillance video confirmed M.G.'s account of what occurred in the pool area.

¶ 4    The prosecution charged L.G. with unlawful sexual contact. The jury convicted him as charged and found he caused submission through force or violence.  The trial court sentenced him to three years in the Division of Youth Services (DYS).

¶ 5    L.G. appeals, arguing he is entitled to a new trial based on the court's improper admission of irrelevant generalized expert testimony and unqualified expert testimony, its denial of L.G.'s right to individual voir dire, and cumulative error.  He further asserts that the trial court abused its discretion at sentencing.  We disagree with these arguments and affirm.

## II.    Generalized Expert Testimony

¶ 6    L.G. first argues that the trial court erred by admitting generalized expert testimony related to behavior exhibited by young children and adolescents following a sexual assault.  He argues this testimony did not fit the facts of the case because M.G. was almost nineteen at the time of the incident.  We discern no error.

¶ 7    Unless otherwise provided, all relevant evidence is admissible. CRE 401.  However, even relevant evidence is inadmissible if its

2

probative value is substantially outweighed by the danger of unfair prejudice. CRE 403. Whether expert testimony is relevant hinges on its "fit" to the case. *People v. Cooper*, 2021 CO 69, ¶ 2. While a perfect fit is not required, generalized expert testimony must have a sufficiently logical connection to the factual issues to be helpful to the jury without running afoul of CRE 403. *Id.* at ¶ 53. We review a trial court's admission of generalized expert testimony for an abuse of discretion and reverse only when its decision is manifestly erroneous. *Id.* at ¶ 44.

¶ 8     Before trial, the prosecution filed a notice to endorse Gayle Christensen as an expert in sexual assault and victim-offender dynamics. The trial court held a hearing and determined that the majority of Christensen's proposed testimony did not fit the facts of the case because it dealt with the dynamics involved in child abuse cases, and M.G. was eighteen years old at the time of the incident. Nevertheless, the court found that the portion of Christensen's expert opinion dealing with the fight or flight response would be helpful to the jury.

¶ 9     At trial, Christensen testified about the fight, flight, and freeze responses, noting that it is not unusual for adolescent victims to

exhibit counterintuitive behaviors during and after unwanted sexual contact, including by laughing, smiling, and not physically resisting.

¶ 10 We conclude the trial court properly exercised its discretion to admit the portions of Christensen's expert opinion that would be helpful to the jury. The trial court specifically found that Christensen's expert opinion about the fight, flight, and freeze responses spoke to the "normal human response" to trauma and did not apply only to children. This included Christensen's expert opinion that the freeze response includes detaching, being unable to take protective action, and attempting to present to others as though nothing happened. The court further noted that this testimony was relevant notwithstanding M.G.'s age because there is not a hard line between seventeen and eighteen years of age. Moreover, the court recognized the distinction between adult and child dynamics and took care to balance the helpfulness of Christensen's opinion against the risk of unfair prejudice, as evidenced by the fact that it excluded most of Christensen's

proposed testimony.[1]  Accordingly, the court acted within its discretion.

### III.    Unqualified Expert Testimony

¶ 11    Next, L.G. argues the trial court erred by admitting expert testimony about "touch DNA" through unqualified lay witnesses. Again, we disagree.

¶ 12    Testimony that is based on scientific, technical, or other specialized knowledge is admissible only from qualified expert witnesses.  CRE 702.  However, under the doctrine of opening the door, a party may present otherwise inadmissible evidence after the opposing party has introduced incomplete evidence that may lead the fact finder astray.  *Lopez v. People*, 2026 CO 23, ¶ 29.  This rule prevents one party from getting the upper hand at trial by selectively presenting facts that create an incorrect or misleading impression.  *Id.*  Where, as here, an argument was not preserved by

---

[1] To the extent L.G. seeks to challenge Christensen's summary of opinions itself, he failed to include it in the record on appeal, and he does not explain how he could have been prejudiced by proposed testimony that was never presented to the jury.  We therefore reject this argument.  *See People v. Duran*, 2015 COA 141, ¶ 12 (we presume material portions omitted from the record would support the court's ruling); *see also People v. Liggett*, 2021 COA 51, ¶ 53 (we do not address undeveloped arguments), *aff'd*, 2023 CO 22.

objection (or an objection was raised on grounds different than those presented on appeal), we will not reverse in the absence of plain error. *Hagos v. People*, 2012 CO 63, ¶ 18 (plain error must be obvious and substantial).

¶ 13 During cross-examination, defense counsel asked the investigating police officer, Officer Karyna Joubert, whether she collected M.G.'s swimsuit bottom because it may have contained "touch DNA." He further asked Officer Joubert to define touch DNA, including by providing her "lay definition." Defense counsel proceeded to cross-examine Officer Joubert about whether she submitted the swimsuit bottom for DNA testing or annotated the steps she took in her report and whether she violated her training and standard operational procedure by failing to do so.

¶ 14 On redirect examination, the prosecutor asked Officer Joubert whether she had any training in testing or analyzing DNA, including "touch DNA." Officer Joubert clarified that she did not. The prosecutor then asked whether the type of contact M.G. described from L.G. would have left DNA evidence that could have been recovered in a SANE (sexual assault nurse examiner) exam, and Officer Joubert testified that it would. She further testified that she

was trained to swab evidence for DNA, whether she believed it might contain DNA evidence or not.

¶ 15 The prosecutor later elicited testimony from another investigating detective, Detective Malcolm Mangels, that when a victim does not report an assault for several days, the window of opportunity for collecting DNA varies based on the environment, type of clothing, and type of assault. During cross-examination, defense counsel again elicited testimony that the detective did not have M.G.'s swimsuit bottom tested for DNA. On redirect, the prosecutor asked Detective Mangels to explain why he had not done so, eliciting testimony that given the presence of the pool water, which contains chlorine, the likelihood of successful testing for touch DNA was unclear.

¶ 16 L.G. argues the trial court plainly erred by allowing lay witnesses to testify about "touch DNA." While he acknowledges that defense counsel initially inquired into this issue for "strategic reasons," he argues the prosecution "exacerbated the problem" by reiterating Officer Joubert's lay definition and then bolstering it with her opinion about the circumstances under which DNA can be found. L.G. further asserts that the trial court erred by

7

subsequently allowing Detective Mangels to testify about the likelihood of obtaining DNA under certain circumstances.

¶ 17     But all of the challenged testimony came after defense counsel asked Officer Joubert for a lay definition of "touch DNA" and then attacked her credibility based on her failure to have M.G.'s bikini bottom tested.  So even if we accept L.G.'s position that the DNA-related testimony was inadmissible except through qualified expert witnesses under CRE 702, or that it constituted improper bolstering evidence, the prosecution was entitled to introduce it.  That is, by suggesting to the jury that the police failed to have relevant evidence tested for DNA, including "touch DNA," the defense opened the door to testimony explaining why.  *Cf. Lopez*, ¶ 43 (our rules only prohibit *unfairly* prejudicial evidence, and in the context of an open door, there is nothing unfair about expert testimony that clarifies the issues).  Therefore, the trial court did not err, let alone plainly err, by admitting this evidence.

## IV.   Individual Voir Dire

¶ 18     Next, L.G. contends that the trial court improperly denied him the right to conduct individual voir dire of a prospective juror who indicated potential bias.  We conclude this argument is waived.

8

¶ 19     In a standard voir dire questionnaire, Prospective Juror 4 indicated that he could not be fair in cases involving child molestation.  L.G. asked the court to individually question Juror 4, but the court declined.  The court explained that defense counsel was "absolutely free to discuss that with him" and "[i]f something should develop" during group questioning that could be further developed, counsel should let the court know.

¶ 20     Despite the court's specific invitation, however, defense counsel did not question Juror 4 during group voir dire.  We conclude that because defense counsel failed to do so, L.G. intentionally relinquished a known right or privilege.  *See People v. Rediger*, 2018 CO 32, ¶ 39 (defining waiver, which extinguishes error).  Accordingly, this argument is waived, and we do not address it further.[2]

---

[2] And because we conclude the trial court made no error at trial, we also necessarily reject L.G.'s argument that reversal is required for cumulative error.  *See People v. Daley*, 2021 COA 85, ¶ 141 ("The doctrine of cumulative error requires that numerous errors occurred, not merely that they were alleged.").

## V. Sentence

¶ 21    Finally, we conclude the trial court properly exercised its discretion at sentencing.

¶ 22    A trial court normally has broad discretion to craft a sentence it deems appropriate for a particular juvenile offender. *A.S. v. People*, 2013 CO 63, ¶ 15. Because the trial court is most familiar with the facts of the case, it is in the best position to fix a sentence that reflects a balance of the relevant considerations. *People v. Vigil*, 718 P.2d 496, 507 (Colo. 1986); *see also A.S.*, ¶ 15 (the juvenile justice system emphasizes a focus on rehabilitation). While the court's discretion is not without limits, "only in truly exceptional situations will this court substitute its judgment as to an appropriate sentence for the judgment of the trial court." *Vigil*, 718 P.2d at 507.

¶ 23    Relevant here are two specific sentencing requirements for violent juvenile offenders and aggravated juvenile offenders. Section 19-2.5-1126(1)(c)(I)(A), C.R.S. 2025, requires the court to sentence a violent juvenile offender "out of the home for not less than one year," and section 19-2.5-1127(1)(a)(I)(A), C.R.S. 2025,

provides the court with discretion to sentence an aggravated juvenile offender to a period of up to five years.

¶ 24  In sentencing L.G. to three years in DYS custody, the trial court considered his youth and amenability to treatment as mitigating factors. However, the court found these factors were outweighed by several aggravating factors, including his escalating behavior beginning in 2020. Specifically, the court noted that at the time of this offense, L.G. was on "sex offender specific probation" following a 2020 guilty plea to posting a private image by a juvenile and that, when L.G. was in eighth grade, he had been accused of (but not charged with) nonconsensual fellatio by a same-aged juvenile. The court noted "that there just does not seem to have been the internalization of the healthy sexuality or healthy boundaries therapy" that L.G. had been engaged in for some time prior to this offense. It further found that it was "quite clear from the video evidence and [M.G.'s] compelling testimony that this was an aggravated sexual assault."

¶ 25  Emphasizing that rehabilitation was its "paramount concern," the court found that a three-year DYS sentence was commensurate with the seriousness of this offense that L.G. committed while on

11

probation. Because this was the third allegation of nonconsensual sexual conduct against him, the court found L.G. was at more than a minimum risk to reoffend. It further determined that he would receive "the most intensive evidence-based thorough rehabilitation and education that he can" at DYS, as opposed to through a community-based approach, which had previously been unsuccessful.

¶ 26 L.G. argues the trial court abused its discretion by relying on the uncharged allegation against him of nonconsensual fellatio, failing to consider his community support and amenability to treatment, and imposing the maximum sentence available. We are not persuaded.

¶ 27 As an initial matter, because L.G. was adjudicated an aggravated juvenile offender, three years was not the maximum sentence available. *See* § 19-2.5-1127(1)(a)(I)(A) (allowing a sentence of up to five years).

¶ 28 Moreover, the court was entitled to consider the previous allegations described in L.G.'s psychosexual evaluation, even if they were uncharged. *See People v. Tallwhiteman*, 124 P.3d 827, 837 (Colo. App. 2005) ("A sentencing court is largely unconstrained as to

12

the evidence it may consider during the sentencing phase of criminal proceedings.").

¶ 29    Also, contrary to L.G.'s arguments, the court considered his community support, including that he has "a supportive family." But the court noted that his protective family was also a risk factor, as documented in the presentence investigation report, which indicated that L.G.'s parents "echoed [L.G.'s] beliefs and attitudes," maintained the stance of "doing the treatment and probation just to get it done," and never held L.G. accountable.  Likewise, the court observed L.G.'s amenability to treatment but, based on his failure to successfully complete probation following his last offense, concluded that he was not likely to take advantage of treatment offered outside the intensive programming available through DYS.

¶ 30    In his reply brief, L.G. concedes that the trial court considered the relevant factors but argues that the factors the court considered did not warrant the sentence imposed.  In essence, L.G. asks us to substitute our judgment for that of the trial court.  Because his sentence falls within the statutory range, is based on relevant considerations, and is otherwise supported by the record, we

decline to do so.  *See People v. Tresco*, 2019 COA 61, ¶ 31 (we must uphold the trial court's sentence on these grounds).

## VI.   Disposition

¶ 31     The judgment is affirmed.

JUDGE SULLIVAN and JUDGE MEIRINK concur.