23CA1392 Peo v Poloa 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1392
El Paso County District Court No. 21CR3700
Honorable Jessica L. Curtis, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Mikaele Jushawn Poloa,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Schock and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Lauretta A. Martin Neff, Alternate Defense Counsel, Montrose, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     A jury convicted defendant, Mikaele Jushawn Poloa, of attempted sexual assault, criminal trespass, indecent exposure, and attempt to influence a public servant.  He appeals these convictions.  We affirm.

## I.     Background

¶ 2     Early one morning in 2021, a woman was sitting in her car in the parking lot of an apartment complex when a man — later identified as Poloa — opened her car door and attempted to sexually assault her.  Poloa said he had a gun and threatened to kill her if she did not comply.  After she fought back and screamed for help, Poloa ran away.

¶ 3     Hours later in a nearby apartment complex, another woman was sitting in her car when she noticed a man — again later identified as Poloa — walking toward her.  She got out of her car and ran toward her apartment.  As she ran, Poloa followed her, exposing and rubbing his penis.  She escaped into her apartment and activated her car alarm.  When she looked out her window, Poloa was gone.

¶ 4     Both women called 911.  When an investigating officer later found Poloa, he gave the officer a false name.

¶ 5    The prosecution charged Poloa with attempted sexual assault, criminal trespass, indecent exposure, and attempt to influence a public servant.

¶ 6    Poloa testified at trial. He admitted to confronting the first woman but claimed he did so to steal her car, not to sexually assault her. He also admitted to giving the police a false name. But he denied any involvement with the second woman.

¶ 7    The jury convicted Poloa as charged. The district court adjudicated him a habitual criminal and sentenced him to a controlling prison term of forty-eight years to life.

¶ 8    On appeal, Poloa contends that (1) the district court erred by denying his request for substitute counsel; (2) the district court erred by denying his objection to the prosecution's exercise of a peremptory strike under *Batson v. Kentucky*, 476 U.S. 79 (1986); and (3) we must reverse his conviction for attempt to influence a public servant due to a legislative amendment enacted after the charged crime.

## II.    Substitution of Counsel

¶ 9    Poloa contends that the district court erred by denying his request for substitute counsel. We disagree.

## A.    Additional Background

¶ 10     The district court appointed counsel to represent Poloa.  At Poloa's request, defense counsel set a conflict hearing.

¶ 11     At the hearing, Poloa asked the court to appoint a new attorney.  He raised concerns that defense counsel (1) did not communicate with his family; (2) had not met with him in person to review discovery; and (3) was "not comfortable" taking the case to trial.  Poloa added that he was "always bumping heads" with counsel because he had to "either see it [counsel's] way or no way."

¶ 12     Defense counsel addressed these points.  He explained that (1) his communication with Poloa's family was limited to preserve attorney-client privilege; (2) the pandemic affected in-person jail visits, but he had reviewed all the discovery with Poloa via Webex;[1] and (3) he didn't remember saying he was "uncomfortable" taking the case to trial, but he did speak with Poloa about what defense they would run because, given the evidence against Poloa, "it's not

---

[1] Defense counsel added that if the pandemic restrictions eased and the case were set for trial, he could arrange an in-person discovery review.

prudent to set a case" like this one for trial "without having that conversation."

¶ 13     The district court found neither a "well founded reason for believing [defense counsel] cannot or will not represent [Poloa]" nor "a complete breakdown in communication" between defense counsel and Poloa that prevented counsel "from putting on an adequate defense." The court therefore concluded that substitute counsel wasn't warranted under *People v. Bergerud*, 223 P.3d 686 (Colo. 2010), and denied Poloa's request.[2]

### B.     Applicable Law and Standard of Review

¶ 14     When a defendant objects to court-appointed counsel, the district court must inquire into the reasons for the dissatisfaction. *People v. Arguello*, 772 P.2d 87, 94 (Colo. 1989). A defendant, however, is not entitled to substitute court-appointed counsel except on a showing of "good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict." *Ronquillo v. People*, 2017 CO 99, ¶ 19 (citation omitted).

---

[2] Defense counsel later requested a second conflict hearing. Because Poloa doesn't raise any argument about this hearing, we don't address it.

And the court may refuse to substitute counsel if it concludes that the attorney-client relationship has not deteriorated to the point where counsel cannot effectively present an adequate defense. *People v. Schultheis*, 638 P.2d 8, 15 (Colo. 1981).

¶ 15    We review a district court's refusal to appoint substitute counsel for an abuse of discretion. *People v. Ramcharan*, 2024 COA 110, ¶ 85; *see also Bergerud*, 223 P.3d at 696 n.4.

### C.    The Court Did Not Abuse Its Discretion by Refusing to Substitute Counsel

¶ 16    The district court did not abuse its discretion by declining Poloa's request to appoint substitute counsel.

¶ 17    As to communications with Poloa's family and the discovery review, Poloa doesn't appear to now argue that either concern established good cause to substitute counsel. Indeed, the record shows that defense counsel's reasons for limiting communication with Poloa's family and for reviewing discovery via Webex were legitimate and reasonable.

¶ 18    That leaves Poloa's claim that a complete breakdown in communication occurred because he and his counsel were "bumping heads" and he had to "see it [counsel's] way or no way."

This at most describes communication difficulties and disagreements about trial strategy or preparation. That's not enough to demonstrate a complete breakdown in communication. *See People v. Johnson*, 2016 COA 15, ¶ 32 (noting that "[m]ere communication difficulties" do not show a complete breakdown in communication); *People v. Kelling*, 151 P.3d 650, 653 (Colo. App. 2006) ("Disagreements pertaining to matters of trial preparation, strategy, and tactics do not establish good cause for substitution of counsel.").

¶ 19　And given the seriousness of the charges and the potential evidence against Poloa, counsel's earnest question about possible defenses doesn't indicate that counsel was unwilling or unable to defend Poloa. *See McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981) ("The starting point for effective representation is a realistic assessment of the prospects of success in light of the risks of failure."). While the pointed question may have reduced Poloa's confidence and trust in counsel, that alone doesn't require the appointment of substitute counsel. *See People v. Tresco*, 2019 COA 61, ¶ 17 (observing that counsel's "lack of confidence in a defendant's ability to prevail at trial does not automatically create a

6

conflict"; collecting cases); *McKee*, 649 F.2d at 932 (concluding that the defendant's "loss of trust" in counsel did not amount to good cause for substituting counsel).

¶ 20     Finally, to the extent Poloa now challenges his counsel's performance, those issues weren't raised at the conflict hearing and, in any event, are more appropriately addressed in a postconviction claim for ineffective assistance of counsel. *See People v. Thomas*, 867 P.2d 880, 886 (Colo. 1994) ("[T]his court has expressed a preference for having ineffective assistance of counsel claims brought in Crim. P. 35(c) proceedings.").[3]

¶ 21     All this said, we conclude that the district court didn't abuse its discretion by denying Poloa's request for substitute counsel.

## III.     *Batson* Challenge

¶ 22     We turn next to Poloa's contention that the district court erred by rejecting his *Batson* challenge to the exclusion of prospective Juror 29.  We are not persuaded.

---

[3] We express no opinion on the merits of any ineffective assistance claims Poloa may later bring under Crim. P. 35(c).

## A. Additional Background

¶ 23    During voir dire, defense counsel asked prospective Juror 29, "What have you heard so far today that you want to talk about?" Juror 29 responded:

> Feelings aren't facts. . . .
>
> The bottom line, beyond a reasonable doubt. I'm not worried about how I feel. I want to know the facts. And the facts can look different all across the board. So — I mean, that's just how I look at it. So how somebody might look or sound, that's all feelings. That's a feeling. It's not facts.

¶ 24    Defense counsel followed up by asking, "And one of the instructions that the [court] is going to give ties to that in a way. It says that sympathy or prejudice can't be part of the decision. I'm not quoting exactly. You have to look at the evidence? Does that make sense to you?" Juror 29 answered, "Yeah . . . . I mean, we want to be gentle, not judgmental, right? So feelings aren't facts."

¶ 25    At the end of voir dire, the prosecutor used a peremptory strike on Juror 29. Defense counsel raised a *Batson* challenge, stating only that Juror 29 is "African-American, and [Poloa] is a person of color."

¶ 26    In response, the prosecutor explained:

8

[Juror 29] indicated [that she] wanted to be "gentle, not judgmental." The People kind of perceive that to be more sympathetic towards [Poloa]. She stated repeatedly that feelings aren't facts, which kind of gave rise to the People's apprehension that she wouldn't be able to read the body language of somebody who's testifying, and there would be no other testifying — she is too fact oriented, and not allowed to follow her feelings toward what a person's credibility is. I'm trying to best articulate what that concern is.

¶ 27    The court then asked, "Do you think that's sufficient to rise to for cause?" Defense counsel immediately answered that the prosecutor "[didn't] want someone to consider the facts in the case."

¶ 28    The court responded, "I didn't interpret it that way. I interpreted it as — that the [p]rosecution wanted someone who would judge credibility not from just a fact-based analysis." Though the court didn't explicitly rule, it implicitly denied the *Batson* challenge.

B.    Applicable Law and Standard of Review

¶ 29    The Equal Protection Clause of the Fourteenth Amendment forbids a challenge to a potential juror based solely on race. *Batson*, 476 U.S. at 89; *see also People v. Owens*, 2024 CO 10, ¶ 75.

9

¶ 30    When a party raises a *Batson* challenge, the district court must apply the three-step analysis first outlined in *Batson* to determine whether a peremptory strike is discriminatory. *Batson,* 476 U.S. at 96; *Owens,* ¶ 75. First, the objecting party must make a prima facie showing that the strike was based on the prospective juror's race. *Owens,* ¶ 76. Second, if this showing is made, the burden shifts to the striking party to provide a race-neutral explanation for the strike. *Id.* at ¶ 77. Third, after the objecting party has had a chance to rebut the striking party's explanation, the court must decide whether the objecting party has established purposeful discrimination. *Id.* at ¶ 78. The court should sustain a *Batson* challenge only if the objecting party proves that the peremptory strike was substantially motivated by discriminatory intent. *See id.*

¶ 31    We review *Batson*'s first and second steps de novo but the third step for clear error. *Id.* at ¶ 79. To survive clear error review, a step-three finding need only have some support in the record and show that the district court considered all the relevant circumstances. *People v. Romero,* 2024 CO 62, ¶ 66.

## C. The Court Properly Denied the *Batson* Challenge

¶ 32    As best we can tell, Poloa challenges the prosecutor's step-two explanation for striking prospective Juror 29 and the court's implicit finding that Poloa did not establish purposeful discrimination at step three. We perceive no error under either step.

¶ 33    Though Poloa says the prosecutor's step-two explanation "boiled down to the suggestion that [Juror 29] would sympathize with Poloa because of their shared race," he didn't argue that before the district court. Regardless, that's not an accurate summary of the prosecutor's explanation. The prosecutor explained that Juror 29's comment that "feelings aren't facts" and her desire to be "gentle, not judgmental" might lead her to sympathize with Poloa and affect her ability to assess credibility. The explanation was tethered to Juror 29's responses, not to any alleged "shared race." Because the explanation for the strike was based on something other than race, the prosecutor satisfied his burden at step-two. *See Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion) (noting that a race-neutral explanation means "an explanation based on something other than the race of the juror").

¶ 34     Turning to step three, Poloa first argues that the district court did not make any findings under step three and that we should remand for a step-three analysis. Alternatively, he says that any findings the court made are clearly erroneous.

¶ 35     The record, however, shows that the district court correctly applied *Batson*'s third step and made supported findings. The prosecution explained that it struck Juror 29 because — based on her comments — she appeared to be sympathetic to Poloa and unable to judge witness credibility. In response, defense counsel didn't argue that the proffered reason was racially motivated or a pretext for discrimination. Instead, defense counsel simply asserted that the prosecution "[didn't] want someone to consider the facts in the case." The court disagreed with counsel's rebuttal and credited the prosecution's explanation for the strike by ruling, "I interpreted it as — that the [p]rosecution wanted someone who would judge credibility not from just a fact-based analysis." We therefore disagree with Poloa that the record is "silent about" and "completely devoid of" any step-three findings.

¶ 36     To be sure, the court's ruling was brief, but so too was defense counsel's rebuttal. Because defense counsel never argued that the

12

prosecution's step-two explanation was pretextual or racially motivated, we don't see what other facts or circumstances the court should've considered in rejecting his *Batson* challenge.[4] *See People v. Wilson*, 2015 CO 54M, ¶ 14 ("Though the [district] court must evaluate all relevant facts, 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'" (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995))); *cf. People v. O'Shaughnessy*, 275 P.3d 687, 695 (Colo. App. 2010) (explaining that the district court "properly could have considered [the] defendant's failure to rebut as acquiescence in the prosecution's explanation" at step three), *aff'd*, 2012 CO 9; *State v. King*, 735 A.2d 267, 281 (Conn. 1999) (noting that the defendant's failure to argue that the prosecutor's race-neutral explanation was "insufficient or pretextual" at step three "may be treated as acquiescence in the validity of" the explanation) (citation omitted). And insofar as Poloa faults the court for not expressly evaluating

---

[4] In fact, we question whether Poloa preserved any step-three arguments for our review. *See People v. Francis*, 731 N.Y.S.2d 706, 707 (App. Div. 2001) ("Since [the] defendant did not contest the race-neutral explanation offered by the prosecutor for the peremptory challenge at issue, [the] defendant's [*Batson* claim] is unpreserved, and we decline to review it . . . .") (citation omitted).

the prosecutor's credibility, demeanor, and intent, the court implicitly considered as much by crediting the prosecution's race-neutral explanation for the strike. *See Romero*, ¶ 43 ("[W]hile not ideal, implicit demeanor and credibility findings may suffice."); *see also People v. Beauvais*, 2017 CO 34, ¶ 30 n.5 (collecting cases from this court holding that "step-three rulings based on implicit credibility determinations can survive clear error review"). Thus, "we conclude that the [district] court's step-three analysis here was adequate because the court properly conducted a *Batson* analysis and issued a *Batson* ruling that could be reviewed on the record." *Beauvais*, ¶ 33.

¶ 37 To the extent Poloa now raises different step-three arguments never presented to the district court — for example, that the prosecution's race-neutral explanation was pretextual, or that the prosecution made a "similar objectionable peremptory strike" against a different juror in a separate case — such arguments aren't properly before us. That's because *Batson*'s three-step framework is limited "to events that occurred on the record and in front of the court." *People v. Madrid*, 2023 CO 12, ¶ 43. *Madrid* held that the prosecution is prohibited from introducing new race-

neutral justifications to support a peremptory strike on remand for additional findings, *id.* at ¶¶ 1-2, 38-57, and we see no reason — and Poloa offers none — why *Madrid*'s holding and rationale apply just to the prosecution or remand proceedings. Because our only job at step three is to determine whether the record supports the district court's ruling, *Romero*, ¶ 66, and because Poloa didn't present the arguments he now makes with respect to step three, we decline to consider them, *see Madrid*, ¶ 43; *see also Wright v. State*, 708 S.W.3d 888, 897 (Mo. Ct. App. 2025) (refusing to review "grounds for *Batson* challenges that were not raised in the [district] court," including "arguments of pretext raised for the first time on appeal") (citation omitted); *People v. Torres*, 737 N.Y.S.2d 282, 282 (App. Div. 2002) (declining to review unpreserved claim that "the race-neutral explanations offered by the prosecutor . . . were pretextual").

¶ 38    For these reasons, we conclude that the district court did not err by rejecting Poloa's *Batson* challenge.[5]

## IV.    Amendatory Legislation

¶ 39    Poloa asks us to reverse his conviction for attempt to influence a public servant because in his view, he's entitled to the benefit of a legislative amendment that "decriminalize[d] the act of giving false identifying information to an officer."  Again, we disagree.

¶ 40    For giving a false name to police, Poloa was charged with and convicted of attempt to influence a public servant under section 18-8-306, C.R.S. 2020, a class 4 felony.

¶ 41    In 2021, the legislature amended section 18-8-306 to state that it is not a violation of that section to provide false identifying information to law enforcement; instead, that conduct is now criminalized as a misdemeanor under a different statute.  Ch. 462,

---

[5] Because defense counsel never argued that the prosecutor's race-neutral explanation was pretextual or racially motivated, the brevity of the district court's *Batson* ruling wasn't fatal here.  But in future rulings, the district court should undertake a complete *Batson* analysis and make express demeanor and credibility findings at step three.  *See People v. Romero*, 2024 CO 62, ¶¶ 36-44, 72-74 (repeatedly emphasizing the importance of express step-three findings for appellate review).

secs. 278, 295, §§ 18-8-111.5, 18-8-306, 2021 Colo. Sess. Laws 3196, 3200.

¶ 42     A defendant may be entitled to the benefit of ameliorative legislation if he requests such relief before the conviction becomes final.  *People v. Stellabotte*, 2018 CO 66, ¶¶ 3, 29; *see also People v. Thomas*, 525 P.2d 1136, 1137-38 (Colo. 1974).  But regardless of the ameliorative nature of a legislative amendment, "we apply expressly prospective statutes only prospectively."  *Stellabotte*, ¶ 29.

¶ 43     We review de novo whether an amended statute applies prospectively or retroactively.  *See id.* at ¶¶ 3, 10.

¶ 44     Doing that here, we conclude that the statute isn't retroactive. The legislature made clear that the amendment "takes effect March 1, 2022," and "applies to offenses committed on or after" that date. Sec. 803, 2021 Colo. Sess. Laws at 3331-32.  Because Poloa committed the charged offense in July 2021, he isn't entitled to the benefit of the legislative amendment.  *See Stellabotte*, ¶ 29; *see also People v. Hamm*, 2019 COA 90, ¶ 27 ("Statutes that, by their terms, are effective 'on or after' a specified date do not apply retroactively.").

¶ 45 Still, Poloa maintains that he should benefit from the amendment because section 18-8-306 does not itself include language that it is effective only prospectively. However, Poloa directs us to no authority — nor could we find any — that supports this argument. To the contrary, the session laws are "the official publication of the enactments" of the legislature. *People v. Washington*, 969 P.2d 788, 789 (Colo. App. 1998); *see also* § 24-70-223(1), C.R.S. 2024. And here, the session law plainly provides that the amendment to section 18-8-306 applies prospectively. *See People v. Schnorenberg*, 2023 COA 82, ¶ 44 (relying on language in session laws to conclude that statutory amendment applied prospectively), *aff'd*, 2025 CO 43.

¶ 46 We therefore conclude that Poloa is not entitled to the benefit of the amendment to section 18-8-306.[6]

## V. Disposition

¶ 47 We affirm the judgment.

---

[6] Because they were raised for the first time in his reply brief, we do not consider Poloa's arguments that the prosecution "overreach[ed]" by charging him under section 18-8-306, C.R.S. 2020, or that section 18-8-306 violates his right to equal protection. *See People v. Owens*, 2024 CO 10, ¶ 90.

JUDGE SCHOCK and JUDGE TAUBMAN concur.